IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENTE SOLOMON,

        Plaintiff,                      No. CIV S-10-2103 WBS GGH P

   vs.

J. NEGRETE, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  By separate order, the court has found several of plaintiff's allegations in his first amended complaint, regarding retaliation for the filing of grievances and inadequate medical care against a number of defendants appropriate for service.  However, plaintiff will not be permitted to proceed willy-nilly against a multitude of defendants on a number of unrelated claims.

        As plaintiff has been previously informed, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

Plaintiff's claims are solely for money damages. AC, p. 3. Plaintiff has set forth some sixteen claims in a 75-page complaint, consisting largely of exhibits, naming more than thirty defendants (although it is difficult to be precise as he lists a number of defendants under

"defendants" and scatters both those names and others not so listed in the body of his allegations). While this is an improvement over his original one hundred plus defendants in a three-hundred-page original filing,[1] and the undersigned is allowing this action to proceed as to some of plaintiff's claims, the court will not permit plaintiff to proceed on a number of allegations that remain violative of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief...." Even if the factual elements of the cause of action are present, but are scattered throughout the complaint and are not organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8(a)(2) is proper. McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (stating that a complaint should set forth "who is being sued, for what relief, and *on what theory*, with enough detail to guide discovery" (emphasis added)). A complaint that fails to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b). Rule 8; Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981)). Further, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit," McHenry 84 F.3d at 1179.

Once again, moreover, in asserting multiple unrelated claims against different defendants, plaintiff presents the kind of "mishmash of a complaint" that has been roundly repudiated. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits"). Fed. R. Civ. P. 18(a) provides: "A party asserting a claim, counter-claim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits[.]" Id.

---

[1] Two earlier amended complaints had to be stricken because plaintiff filed them on the same day. See Order, filed on May 3, 2011.

3

1    It is true that Fed. R. Civ. P. 20(a) provides that "[p]ersons ...may be joined in one
2 action as defendants if: (A) any right is asserted against them jointly, severally, or in the
3 alternative with respect to or arising out of the same transaction, occurrence, or series of
4 transactions or occurrences; and (B) any question of law or fact common to all defendants will
5 arise in the action." However, "[a] buckshot complaint that would be rejected if filed by a free
6 person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him,
7 D failed to pay a debt, and E infringed his copyright, all in different transactions – should be
8 rejected if filed by a prisoner." Id. at 607.

9    The court has found colorable plaintiff's allegation that he was placed in the SHU
10 (security housing unit) from December 31, 2006 to July 28, 2007, in retaliation for having filed a
11 grievance against defendant Torres after she allegedly threatened to have him beaten, raped and
12 killed by other inmates and defendants Norgaard, and Wright allegedly covered up her conduct
13 and kept him in SHU when he refused to withdraw his complaint.  However, plaintiff goes on to
14 allege, contradictorily, that when he continued to refuse to drop his complaint on defendant
15 Torres (and others), he was forced out of the SHU and sent back to defendant Torres' building
16 "to be assaulted and could've been killed." Amended Complaint (AC), p. 3.  This portion of his
17 claim is not colorable because he does not name who forced him to return to the building where
18 Torres worked nor does he clarify whether he was ever actually assaulted in any way.  This
19 portion of his allegations should be dismissed.

20    Plaintiff's allegations against defendants Caresco, Bryant and Steadman will also
21 be dismissed, wherein he claims that after his SHU term was up on March 12, 2008 (evidently a
22 different one from the one referenced immediately above), he was written up for a "minor" 115
23 prison disciplinary offense for which he had already been punished. AC, p. 68.[2]  Plaintiff
24 believes that defendants rationale for retaining him in the SHU, that plaintiff had enemies on

---

[2] The pagination from claim one to claim two is so widely separated because of the manner in which plaintiff inserted his various exhibits between the body of his allegations.

4

every yard, was pretextual.  Plaintiff also claims that J. Negrete; Corr. Counselor II T. Miner wrongly retained him in the SHU even though a write-up was dismissed and ordered re-heard. Id., at 72.  Plaintiff simply provides an inadequate factual predicate for his claim and, in any case, simply being retained in the SHU or administrative segregation does not implicate plaintiff's constitutional rights.  A prisoner has no protected liberty interest in not being confined in the security housing unit where placement and retention therein were "within the range of confinement to be normally expected" by prison inmates.  Resnick v. Hayes, 213 F.3d 443, 448-49 (9th Cir.2000); May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997) (noting that "the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence").  Plaintiff does not allege conditions of confinement in the SHU that implicate an atypical and significant hardship in relation to the ordinary incidents of prison life.  Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995)

        Plaintiff's wide-ranging claims regarding loss of personal property, including a stereo, jewelry, medical equipment (including a lack of reimbursement for eyeglasses), food, photos, books, legal work, a television against various defendants in different years apparently at different facilities are unrelated to the gravamen of the allegations on which he is being allowed to proceed and will be dismissed.  In addition, the United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194 (1984); Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989) ("[i]n Parratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908 (1981),[3] the Court held that where a deprivation of property resulted from the unpredictable negligent acts of state agents, the availability of an adequate state postdeprivation remedy satisfied the requirement of due

---

[3] Overruled on another ground by Daniels v. Williams, 474 U.S. 327, 330-331, 106 S. Ct. 662, 664 (1986).

process.")  Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). The California Legislature has provided a remedy for tort claims against public officials in the California Government Code, §§ 900, et seq. Plaintiff has not alleged facts, to the extent that they can be discerned, which suggest that the deprivations by defendants Sheet, Cable, Mello, Heil, Grimm, Wallace, Cannon, Turner, Bonville, Davis, Foston, Hodges, Hollins, Blankenship, Gentry, R. Curliss, Lt. Schuyler were authorized. AC, pp. 69-70, 72-73. These claims and defendants should be dismissed.

The court has found plaintiff's claim that defendant Dr. Tate was deliberately indifferent to plaintiff's serious medical need when he allegedly abruptly discontinued plaintiff's chronic pain medication. AC, p. 70. Plaintiff also has allowed plaintiff to proceed on a claim of retaliation against defendant Dr. Stallcup for her alleged actions as a result of plaintiff's filing a grievance. Id., at 70-71. However, his bare and broad allegation that "Dr. Jaquin allows all of this," (id., at 70) seemingly penned in as an afterthought is not enough to frame a cognizable claim. The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which

6

complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

  Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Defendant Jaquin should be dismissed.

  In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

  A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Plaintiff's claims regarding inadequate dental care, primarily resting on a claim that the CDCR has a policy of pulling back teeth rather than providing expensive root canals will be dismissed. AC, p. 71. These claims involving defendants Dr. Bruitt; Dr. Doung; Nurse Franco; Pounds are simply too far afield of his claims of retaliation and inadequate medical care related to that in this essentially scattershot amended complaint.

Plaintiff's claims regarding being limited to a choice between his P.L.U. (preferred library/legal user) status and access to outdoor exercise is inadequate to frame a claim as set forth (AC, p. 73), and these claims against defendants Capt. Lundy, Lt. Schuyler, and Sgt. Franco will be dismissed. Also dismissed are plaintiff's very recent claims, dating from April 12, 2011, regarding being provided the wrong medication by defendant Carol Hibbard, and his claims arising from this against a litany of additional defendants. Id., at 74. In addition, plaintiff goes briefly into an episode involving an uncontrollable outburst in which he engaged in April, 2011, purportedly as a result of being given the wrong medication. Id. His claims arising of retaliation due to a false charge against him by defendant Heard (arising from the outburst evidently but this is not clear) will also be dismissed for a lack of clarity. In addition, it is unlikely that plaintiff's claims arising from incidents in April, 2011 will have been administratively exhausted.

Pursuant to 42 U.S.C. § 1997e(a), no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010) (PLRA exhaustion requirement satisfied with respect to new claims within an amended or supplemental complaint so long as administrative remedies are exhausted prior to the filing of the amended or supplemental complaint). As to the April, 2011, claims, the court finds plaintiff has implicitly conceded his failure to exhaust administrative remedies in his first amended complaint (notwithstanding his blanket assertion at the outset that he has administratively exhausted all 16 claims). AC, p. 3. A prisoner's concession to nonexhaustion is a valid ground for dismissal of an action. Wyatt v. Terhune, 315 F.3d at 1120; McKinney v. Carey, 311 F.3d at 1200-01; Carroll v. Department of Corrections, 2008 WL 4911179 * 1 (N.D. Cal. 2008)("[b]ecause exhaustion under § 1997e(a) is an affirmative defense, a complaint may be dismissed for failure to exhaust only if failure to exhaust is obvious from the face to the complaint and/or any attached exhibits."

1  These claims should be dismissed.

2  <u>Motion for Preliminary Injunction</u>

3  Plaintiff has filed another request for an emergency transfer. See request, filed on
4  June 3, 2011 (docket # 24).

5  "The proper legal standard for preliminary injunctive relief requires a party to
6  demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm
7  in the absence of preliminary relief, that the balance of equities tips in his favor, and that an
8  injunction is in the public interest.'" <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir.
9  2009), quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, ___ U.S. ___, 129 S. Ct. 365, 374
10 (2008).

11 The Ninth Circuit has found that post-<u>Winter</u>, this circuit's sliding scale approach
12 or "serious questions" test survives "when applied as part of the four-element *Winter* test."
13 <u>Alliance for Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011) : "That is, 'serious
14 questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff
15 can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a
16 likelihood of irreparable injury and that the injunction is in the public interest. <u>Id</u>.

17 In cases brought by prisoners involving conditions of confinement, any
18 preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the
19 harm the court finds requires preliminary relief, and be the least intrusive means necessary to
20 correct the harm." 18 U.S.C. § 3626(a)(2).

21 Plaintiff sets forth a litany of grievances that he wants remedied. Request, pp. 1-
22 4. He complains that his prior complaints in this action have been rejected by this court because
23 law librarians and an inmate jailhouse lawyer are not helping him enough or are even sabotaging
24 his efforts. This claim has no supportable basis. He claims that the CDCR is trying to kill him
25 or hurt him badly and states they have already done so on August 3, 2007, referencing a case in
26 which he is currently proceeding in federal court, <u>Solomon v. Felker, et al.</u>, CIV-S-08-2544 WBS

JFM P.[4]  He goes on to complain of being cut-off from his pain medication, having his television and over ten legal books destroyed, having his complaints mixed up, being thrown in the "hole," of having been shot and pepper-sprayed, of being denied legal paper supplies.  Request, pp. 2-3.  He speaks of the facility at which he is housed, CCI, as being "a very dark and corrupted place."  Id., at 3.  Despite plaintiff's allegations that CDCR generally is trying to injure or kill him, plaintiff then asserts that he will feel safe at either California Medical Facility (where he believes he can, as an EOP or CCCMS inmate, receive the medical attention and legal assistance he states that he needs) or Mule Creek State Prison.  Id.

    Plaintiff has failed to include a request for permanent injunctive relief in the underlying action.  The court is unable to provide preliminary injunctive relief when plaintiff has sought only money damages as relief in his underlying claims.  Plaintiff has been successful in submitting an amended complaint which the court has now screened.  Plaintiff's fears that he is being sabotaged by CCI correctional officers in the filing of his amended complaints and motions do not appear to be well-founded.  As for his request for a transfer, he does not list this as a form of relief he seeks within his first amended complaint.  He appears to be already proceeding in another action with regard to his allegations arising from an incident in August 2007.

    Even assuming plaintiff had sought injunctive relief in his first amended complaint, the court finds at this juncture that plaintiff, who has something of a history in this case of filing somewhat histrionic and wide-sweeping allegations, has not demonstrated a likelihood of irreparable harm if he is not provided preliminary injunctive relief.  Nor, simply because some of his claims have survived the court's screening, is likelihood of success on the merits shown, though, arguably, serious questions are raised; atthis time, it is not apparent that a hardship balance tips sharply toward plaintiff.

    This court will recommend denial, without prejudice, of this latest request for

---

[4] The court notes that plaintiff has no less than three putative motions for preliminary injunctive relief seeking a transfer, all pending in that case.

11

emergency relief.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants Caresco, Bryant, Steadman, Negrete, Miner, Sheet, Cable, Mello, Heil, Grimm, Wallace, Cannon, Turner, Bonville, Davis, Foston, Hodges, Hollins, Blankmanship (or Blankenship), Gentry, Curliss, Bruitt, Doung, Nurse Franco, Jaquin, Hibbard, Heard be dismissed; in addition, that portion of plaintiff's claim against defendants Torres, Norgaard and Wright regarding being forced out of the SHU be dismissed. As well, plaintiff's claims against defendants Lundy, Schuyler and Sgt. Franco, regarding a claimed lack of outdoor exercise be dismissed; also claims against defendant Schuyler related to a deprivation of a variety of personal property be dismissed.

2. The case only proceed as to the following: a claim of retaliation against Torres, Norgaard, Wright for placing and retaining plaintiff in the SHU from December 31, 2006 to July 28, 2007, for the filing of a grievance against defendant Torres; a claim of inadequate medical care regarding an alleged abrupt termination of pain medication against defendant Tate; a claim of retaliation against defendant Stallcup for her alleged actions following the filing of a grievance by plaintiff; a claim of an Eighth Amendment violation against defendants Vasquez, Medrano and Barajas for excessive force and retaliation, regarding a pepper-spraying incident and its aftermath, as well as a claim of retaliation against defendants Garcia, Lundy, Campbell, Sgt. Franco and Prior, regarding plaintiff's filing complaints about being pepper-sprayed.

3. Plaintiff's June 3, 2011 (docket # 24), request for preliminary injunctive relief be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections

within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 20, 2011                           /s/ Gregory G. Hollows
                                               _____
                                               UNITED STATES MAGISTRATE JUDGE

GGH:009
solo2103.fr