UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENTE SOLOMON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. NEGRETE, et al.,<br><br>　　　　Defendants. | No. 2:10-cv-2103 WBS AC P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S. § 1983. Pending before the court is defendant Tate's motion for summary judgment (ECF No. 114), filed on July 30, 2013. Although the court has granted plaintiff ample opportunity to file an opposition (see ECF Nos. 120, 125), he has failed to do so. When plaintiff initially failed to respond to the motion after more than sixty days, the court allowed an additional thirty days and cautioned plaintiff that failure to oppose would result in defendant Tate's asserted facts being deemed undisputed for purposes of resolving the motion. ECF No. 120. Plaintiff thereafter sough an additional extension of time, which was granted. ECF No. 125. When plaintiff failed again to file an opposition within the time provided, and instead requested still another extension, the court denied the request. At that point the motion had been pending for more than six months. The motion was accordingly deemed unopposed. ECF No. 127.

1

FIRST AMENDED COMPLAINT

At the screening stage, the court found that the verified first amended complaint (ECF No. 25) set forth a colorable Eighth Amendment claim against defendant Tate for inadequate medical care, based on the abrupt termination of plaintiff's pain medication.  ECF No. 26 at 2; see also, ECF No. 35 at 2.  Plaintiff specifically alleges that in November 2009, defendant Dr. Tate "wrote [him] up" because he had asked for help and wanted to have his pain medication renewed.  Tate abruptly cut plaintiff off the pain medication he received for a chronic back condition, saying that plaintiff was "cure[d]," even though the medical review board and health care manager board had approved his treatment.  Plaintiff references x-rays and therapy at Tehachapi Hospital on June 28, 2008.  He also states that there are M.R.I. reports for him at SVSP (Salinas Valley State Prison) and CCI (California Correctional Institution-Tehachapi) dated Nov. 30, 2009 and December 30, 2009.  Plaintiff alleges that he was at the EOP level of mental health care at the time defendant Tate cut him off and that no one, especially a mental health patient, should ever be abruptly cut off of "a powerful narcotic."  Plaintiff contends defendant Tate "was trying to force me to kill myself."  First Amended Complaint (FAC), ECF No. 25 at 70.  Plaintiff seeks compensatory and punitive damages.  Id. at 3.

MOTION FOR SUMMARY JUDGMENT

Defendant Tate moves for summary judgment on the ground that he was not deliberately indifferent to plaintiff's medical needs, nor did he act in retaliation, when he discontinued plaintiff's pain medication.  In addition, defendant Tate claims entitlement to qualified immunity.  ECF No. 114.

I.    Legal Standard for Rule 56 Motions

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986).  The moving party may accomplish this by "citing to particular parts of materials in the

1   record, including depositions, documents, electronically stored information, affidavits or
2   declarations, stipulations (including those made for purposes of the motion only), admission,
3   interrogatory answers, or other materials" or by showing that such materials "do not establish the
4   absence or presence of a genuine dispute, or that the adverse party cannot produce admissible
5   evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B).  When the non-moving party bears
6   the burden of proof at trial, "the moving party need only prove that there is an absence of
7   evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex,
8   477 U.S. at 325.); see also Fed.R.Civ.P. 56(c)(1)(B).  Indeed, summary judgment should be
9   entered, after adequate time for discovery and upon motion, against a party who fails to make a
10  showing sufficient to establish the existence of an element essential to that party's case, and on
11  which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322.  "[A]
12  complete failure of proof concerning an essential element of the nonmoving party's case
13  necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment
14  should be granted, "so long as whatever is before the district court demonstrates that the standard
15  for entry of summary judgment . . . is satisfied." Id. at 323.
16      If the moving party meets its initial responsibility, the burden then shifts to the opposing
17  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
18  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
19  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
20  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
21  admissible discovery material, in support of its contention that the dispute exists. See
22  Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate
23  that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under
24  the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.
25  Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the
26  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
27  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).
28      In the endeavor to establish the existence of a factual dispute, the opposing party need not

1 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
2 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
3 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
4 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
5 Matsushita, 475 U.S. at 587 (citations omitted).

6 "In evaluating the evidence to determine whether there is a genuine issue of fact," the
7 court draws "all reasonable inferences supported by the evidence in favor of the non-moving
8 party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir.2011).  It is
9 the opposing party's obligation to produce a factual predicate from which the inference may be
10 drawn.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd,
11 810 F.2d 898, 902 (9th Cir.1987).  Finally, to demonstrate a genuine issue, the opposing party
12 "must do more than simply show that there is some metaphysical doubt as to the material facts....
13 Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving
14 party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

15 In applying these rules, district courts must "construe liberally motion papers and
16 pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly."
17 Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly
18 support an assertion of fact or fails to properly address another party's assertion of fact, as
19 required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the
20 motion. . . ."  Fed. R. Civ. P. 56(e)(2).  Plaintiff was provided notice of the requirements for
21 opposing a motion pursuant to Rule 56, as required by Rand v. Rowland, 154 F.3d 952, 957 (9th
22 Cir. 1998) (en banc), Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.1988), and Woods v. Carey,
23 684 F.3d 934 (9th Cir. 2012).  ECF Nos. 53, 115.  After repeated extensions of time, however,
24 plaintiff failed to submit an opposition that addressed the moving party's assertions of fact.
25 Accordingly, as previously noted, the court has deemed the motion unopposed.  ECF No. 127.
26 Nonetheless, in light of plaintiff's pro se status and because summary judgment may not be
27 granted automatically due to the failure to oppose, see Heinemann v. Satterberg, 731 F.3d 914
28 (9th Cir. 2013), the undersigned has independently reviewed the record and considered whether

any of the facts characterized by defendant as undisputed are contradicted by record evidence or subject to a contrary interpretation.

II.     Undisputed Facts

The court finds the following facts to be undisputed:

- Plaintiff has been incarcerated in state prison since 1998 and, for the time relevant for this action, has been housed at CCI.

- Defendant Dr. Tate has been employed by CDCR since 2004, served as chief medical officer at CCI from 2004-2007, is a CCI staff physician and surgeon and was at CCI for the time relevant for this action; he provides primary medical care to inmates and responds to inmate appeals (CDC 602) at the lower levels.  MSJ, Tate Dec. ¶¶ 1-2, 5, ECF No. 114-3, Ex.A.

- It is difficult to treat chronic pain and in most cases pain cannot be completely alleviated.  Patients who take narcotics run the risk of developing a tolerance to the drugs and risk becoming dependent or even addicted.  Narcotic pain medication should only be used to treat patients who are gravely disabled and dysfunctional due to their pain, and should not be prescribed to functional patients able to carry out daily activities with minimal discomfort.  MSJ, Tate Dec. ¶ 6, ECF No. 114-3, Ex A.

- Plaintiff was in the Mental Health Services Delivery System (MHSDS) at the Correctional Clinical Case Management Services (CCCMS) level of care until October 15, 2009, when he was elevated to the Enhanced Outpatient Program (EOP) level of care due to his "significant history of suicidal attempts, childhood ADHD, and a history of violence."  However, the treatment team which noted this in a form dated December 10, 2009, also found that the CCCMS level of care was adequate for his mental health needs as of that time.  FAC, ECF No. 25 at 55, CDCR Form 7230A-MH, interdisciplinary progress notes dated 12/10/09.

- On November 8, 2009, plaintiff submitted a Request for Health Services Form stating that he had a medical emergency and asking for a renewal of his prescriptions for morphine and gabapentin.  FAC, ECF No. 25 at 51 (copy of defendant Tate's RVR accusing plaintiff of "manipulation of staff" on Nov. 8, 2009), 70; MSJ, Tate Dec. ¶¶ 7, 10, ECF No. 114-3, Exs. B, D.

- On the Health Services Request Form (dated 11/3/09 by plaintiff and by the triage nurse as received and reviewed by the nurse on 11/6/09 at 2:00 p.m.), plaintiff wrote that his medical 602 appeal had been granted in the previous month for his pain meds to be renewed before they expired.  He further states that he had yet to be seen and his morphine and gabapentin were due to expire on 11/10/09.  ECF No. 114-3, Ex. B.

- Plaintiff saw defendant Tate for medical care for the first time on November 8, 2009 and did not see him again until May 2011.  Tate Dec. ¶¶ 7, 11; Plaintiff's Dep. 163:14-20.

- In the initial encounter, plaintiff asked for his Oramorph (morphine sulfate, a narcotic for pain relief) and gabapentin (for relief of neuropathic pain) before they expired.  Tate Dec. ¶ 7; Plaintiff's Dep.166:1-9.

- Defendant Tate declares that plaintiff's morphine sulfate prescription was due to expire on November 11, 2009 and his Gabapentin was due to expire on April 11, 2010.  Tate Dec. ¶ 7.

5

- Defendant Tate did not consider plaintiff's request to be an emergency, but he examined him. Plaintiff, according to Dr. Tate, told him he had been taking Oramorph and gabapentin for a gunshot wound[1] he had received two years earlier and for unspecified problems with his shoulders, hips, and low back. While plaintiff did not tell him he was in pain, defendant Tate noted that plaintiff had tenderness of the bicep. Dr. Tate also observed plaintiff was muscular with a powerful build. Tate Dec. ¶ 8.

- Defendant Tate reviewed plaintiff's medical records and saw that he had received several imaging studies of his lumbar spine and pelvis earlier in the year. The studies showed some minor degenerative or arthritic changes, but no abnormalities, fractures, dislocations, or misalignment. Dr. Tate diagnosed plaintiff with bicep tendonitis possibly caused by heavy exercise given his muscular build. Tate Dec. ¶ 8.

- Defendant Tate saw no medical evidence to justify plaintiff's need for morphine or gabapentin, especially given that morphine is an addictive narcotic. Tate Dec. ¶ 8.

- Plaintiff testified that prior to November of 2009, he was engaging in an exercise regimen which three to five times a week which included "calisthenics and push-ups and back arms"; plaintiff described the back arms exercise as "back arms, off the bed, like bent over, back arms, leaning forward." Plaintiff described the exercise as part of the treatment regimen he had been prescribed since February or March of 2009. Plaintiff's Dep.: 166:20-167:2; 167:14-168:2. His treatment regimen also included physical therapy. See, e.g., ECF No. 25 at 53.

- Defendant Tate discontinued the medications, informing plaintiff of his decision. FAC, ECF No. 25 at 70; MSJ, Tate Dec. ¶ 8, ECF No. 114-3, Ex. C (Tate progress note, dated 11/08/09).

- Plaintiff attests that he had been on morphine and Tylenol with codeine (or Tylenol 3s), which was switched to morphine and gabapentin, since after he had had an MRI at SVSP in February or March of 2009. Plaintiff's Dep.: 164:13-23.

- Because plaintiff's prescriptions had not yet expired and his appeal on the issue had already been granted, defendant Tate informed plaintiff that his request for emergency treatment was an abuse of the medical services request process. Tate Dec. ¶ 9; Plaintiff's Dep.: 166:6-13.

- Defendant Tate wrote an disciplinary report charging plaintiff with "manipulation of staff" because he had been diverted by plaintiff on November 8, 2009 from his other work as the infirmary physician by plaintiff having "submitted a Request for Health Services Form 7362 on an 'emergency basis.'" Defendant Tate conducted a chart review and physical examination of plaintiff but "[t]he 7362 request was for renewal of morphine and gabapentin," neither of which defendant Tate reported, "constituted a medical emergency." FAC, ECF No. 25 at 51; MSJ, Tate Dec. ¶ 10, Ex. D.

- Medical records show plaintiff was seen by another CCI medical provider on November 10, 2009, complaining that his pain medication had been discontinued by defendant Tate in retaliation for his submitting an emergency appeal. This practitioner renewed gabapentin for plaintiff and prescribed him Tylenol. Tate Dec. ¶ 12, ECF No. 114-3, Ex. E (Progress notes for 11/10/09); plaintiff's Deposition: 194:8-10.

---

[1] Plaintiff describes his lower back pain as having begun on August 3, 2007, when he "was assaulted and beaten" by officers at High Desert State Prison. Plaintiff's Dep. 165:14-20.

- The medical provider who saw plaintiff on November 10, 2009 noted that despite complaining of bilateral shoulder pain, plaintiff had been observed exercising, walking, and participating in daily activities without difficulty and had a normal gait and very muscular shoulders without signs of atrophy. The practitioner saw no medical justification for morphine. Tate Dec. ¶ 12, ECF No. 114-3, Ex. E (Progress notes for 11/10/09).

- Medical records show that on November 12, 2009, plaintiff refused to take his prescribed gabapentin after the nurse refused his request not to crush the medication. Tate Dec. ¶ 12, ECF No. 114-3, Ex. F.

- Plaintiff did not file his first 602 inmate appeal against defendant Tate until after defendant Tate cut off his medication and wrote him up on a prison disciplinary. Plaintiff's Dep. 169:10-24.

- Plaintiff's medical records show that nonparty Dr. Lee saw plaintiff on December 10, 2009, concerning plaintiff's inmate 602 appeal filed against defendant Tate for discontinuing his medications on November 8, 2009. Dr. Lee noted plaintiff was able to move his upper body freely, rotate his lumbar spine, flex and extend his legs, stand, and sit without pain or difficulty or any facial grimaces showing pain. Dr. Lee concluded further that plaintiff's pain complaint did not correlate with the medical findings, and he did not renew the morphine plaintiff requested. Although plaintiff stated that gabapentin did "nothing for [him]," Dr. Lee recommended that plaintiff stay on the medication based on a March 2009 EMG showing that he had decreased sensation of the lumbar spine. MSJ, Tate Dec. ¶ 14, ECF No. 114-3, Ex. G (Dr. Lee's 12/10/09 progress notes for plaintiff).

- The court's review of the progress notes indicates that while Dr. Lee did "not see the Morphine Sulphate [was] medically indicated based on CT and EMG," he also wrote that should the MRI of plaintiff sedated showed more significant problems, a referral to a specialist might be needed. ECF No. 114-3, Ex. G at 32.

- In a prior declaration submitted by defendant Tate in response to plaintiff's earlier motion for a preliminary injunction, Dr. Tate pointed out that the medical records also show that plaintiff received gabapentin every day during December of 2009, and was prescribed pain medication in the form of Tylenol and Motrin (ibuprofen). ECF No. 47, [first] Tate Dec. ¶ 11, ECF No. 47-2, Ex. B at 11-14; see also, MSJ, ECF No. 114-3, Ex. H.

- Dr. Kang discontinued plaintiff's gabapentin for a 10 day period in January 2010, and prescribed Tylenol, ibuprofen and tramadol for pain. Plaintiff received the latter medications throughout January 2010. MSJ, ECF No. 114-2, Tate Dec. ¶ 15, ECF No. 114-3, Ex. H; ECF No. 47, first Tate Dec. ¶ 13, ECF No. 47-2, Ex. B at 14-16.

- The physician who saw plaintiff on January 11, 2010, reviewed a recent MRI of plaintiff's spine and did not find morphine sulfate to be appropriate for plaintiff's condition but, noting that the gabapentin had been discontinued but that plaintiff was still receiving it, prescribed both gabapentin and Ultram (tramadol). MSJ, Tate Dec. ¶ 16, ECF No. 114-3, Ex. I. The notes indicate plaintiff was seen for chronic lower back pain and claimed to be in "lots of pain."

- Plaintiff's medical records show the doctor who saw plaintiff on February 1, 2010, for follow-up on his lower back pain noted plaintiff was not in acute distress and was well

7

developed and well nourished, but increased the Ultram and made no change to the gabapentin prescription. MSJ, Tate Dec. ¶ 17, ECF No. 114-3, Ex. J.

- In his earlier review of the medical records, defendant Tate had noted that plaintiff had received tramadol and gabapentin three times a day in February, March, May, June, July, and August 2010, according to the Medical Authorization Records in plaintiff's file. First Tate Dec. ¶ 14, ECF Nos. 47-2, Ex. B at 15-31, ECF No. 47-3 at 1-6.

- Medical records show plaintiff refused to go to doctor appointments on March 1 and March 15 of 2010 but his medication was renewed after a chart review. MSJ, Tate Dec. ¶ 18, ECF No. 114-3, Ex. K.

- In April 2010, the records showed tramadol and gabapentin were discontinued for ten days, but plaintiff otherwise received these medications three times a day. First Tate Dec. ¶ 15, ECF No. 47-2, Ex. B at 22-25.

- Plaintiff's medical records show that in May, June and July, 2010, plaintiff refused some medication on a number of occasions. In particular, on May 25, 2010, plaintiff threw his Ultram and gabapentin in the toilet. MSJ, Tate Dec. ¶ 19, ECF No. 114-3, Exs. L, M.

- Plaintiff received gabapentin three times a day in September 2010, but a doctor discontinued the tramadol and prescribed him another pain medication - acetaminophen with codeine. MSJ, Tate Dec. ¶ 21, ECF No. 114-3, Ex. N; First Tate Dec. ¶ 16, ECF No. 47-3, Ex. B at 7-12.

- According to the medical records, plaintiff received tramadol (which had been renewed in late September by the same doctor who had discontinued it) and gabapentin three times a day with occasional "minor" lapses of a day or two due to changing or expiring prescriptions, from October 2010 to early May 2011; in March 2011, plaintiff was provided a prescription for ibuprofen (800 mg tablets) to be taken three times daily. MSJ, Tate Dec. ¶ 22, ECF Nos. 114-3, 114-4, Ex. O; First Tate Dec. ¶ 17, ECF No. 47-3, Ex. B at 13-30, ECF No. 47-4 at 1-18.

- On May 2, 2011, defendant Tate saw plaintiff for his back pain complaints, examined him, noting he still had a very muscular build. Defendant Tate declares plaintiff did not show distress during his examination, which included a back exam. Defendant told plaintiff that he was going to wean him off gabapentin and tramadol and ordered that plaintiff be weaned off these drugs over the period of one week. He renewed the ibuprofen prescription to address any pain complaints. MSJ, Tate Dec. ¶ 23 , ECF No. 114-3, Ex. P (5/02/11 Progress Notes/Physician's Order).

- On May 16, 2011, plaintiff saw defendant Tate for an inmate appeal about not having received pain and blood-pressure medication a few months before. Plaintiff also asked defendant to put him back on gabapentin and tramadol, which request defendant denied. Defendant Tate declares his review of plaintiff's medical records showed age appropriate spine degeneration and plaintiff's muscular appearance and movements did not support his claim of pain. He asserts that plaintiff had an ibuprofen prescription he believed was more than adequate to address any musculoskeletal pain complaints. MSJ, Tate Dec. ¶ 24, ECF No. 114-3, Ex. Q (5/16/11 Progress Note).

- On June 16, 2011, defendant Tate again saw plaintiff regarding an emergency request for medical services because he was in extreme pain, no doctor had seen him, and he asked for morphine, tramadol and gabapentin. Defendant Tate's review of plaintiff's medical records showed plaintiff had been seen by medical staff in response to his request for medical services. Defendant Tate conducted only a visual examination due to plaintiff's

8

agitation, noting that he walked and moved without difficulty or signs of pain. Plaintiff insisted that Tate not treat him because of their "conflict of interest." Defendant declares he reminded plaintiff that in the past month his exams had found plaintiff's back within normal limits. Defendant also showed plaintiff a web page he had posted for a pen pal advertisement, wherein he stated he was in good health[2] and a weight trainer, reminding plaintiff that his labeling his request as an emergency or lying about the treatment he has received was an abuse of the medical process. Plaintiff expressed profanities toward defendant and left the room. MSJ, Tate Dec. ¶ 25, ECF No. 114-3, Ex. R (6/16/11 Progress Note and convict.house.com web page).

- Defendant Tate declares that at some point after June 16, 2011, plaintiff stated that if Tate attempted to treat him again, plaintiff would take it as a threat to his life and he would protect himself. MSJ, Tate Dec. ¶ 26.

- Plaintiff refused to attend scheduled medical appointments with defendant Tate on July 21 and 28, August 11, 18 and 22, and September 6, 2011. Nevertheless, defendant Tate rescheduled plaintiff for further appointments and made sure his prescriptions, including pain medication, were renewed. MSJ, Tate Dec. ¶ 27, ECF No. 114-3, Ex. S.

- According to defendant's review of the medical records, no medical provider has determined that renewal of plaintiff s prescription for morphine, tramadol or gabapentin is medically justified. MSJ, Tate Dec. ¶ 28.

- Defendant Tate's review of the medical records indicates plaintiff currently receives indomethacin (a nonsteroidal anti-inflammatory drug in the same class as ibuprofen) for his complaints of pain. MSJ, Tate Dec. ¶ 29.

### III. Governing Eighth Amendment Principles

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the

---

[2] Actually, plaintiff does not state he is in good health, but wishes good health upon the recipient. He does state that he is a weight trainer, however.

presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. Farmer, 511 U.S. at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Id. at 836-37. It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added).

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to *competently* treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id. However, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). In cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).

A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the

defendant." McGuckin, 974 F.2d at 1061.

IV.     Analysis

The court first addresses the scope of the claim at issue.  As previously noted, the claim against Dr. Tate is based on the doctor's actions in November of 2009 regarding plaintiff's pain medications.  See ECF No. 25 (First Amended Complaint) at 70 ("Statement of Claim #8," alleging deprivation of pain medication in November 2009); id. at 51 (Rules Violation Report filed by Dr. Tate regarding plaintiff's false "medical emergency" in November 2009).  This case is not proceeding on a claim regarding defendant Tate's management of his plaintiff's medications in May of 2011, nor is it proceeding on a claim of retaliation.  See ECF No. 26 (screening order), No. 27 (Findings and Recommendations), No. 35 (order adopting Findings and Recommendations) at 2 (identifying remaining claims).  Plaintiff brought a motion for preliminary injunctive relief in September 2011, which alleged that he was not receiving necessary pain medication at that time, and that Dr. Tate was withholding medication because plaintiff had sued him.  ECF No. 41.  That motion was denied after briefing.  ECF Nos. 55, 71.  The motion for injunctive relief did not have the effect of amending the petition.  Indeed, the court confirmed that the claim against Dr. Tate remained what it had always been: a claim that Dr. Tate acted with deliberate indifference to a serious medical need by cutting off plaintiff's pain medications in November 2009.  ECF No. 55 at 2-3.

Defendant Tate is entitled to summary judgment because plaintiff has failed to raise a genuine dispute of material fact as to whether Dr. Tate acted with deliberate indifference to a serious medical need.  Plaintiff received treatment for his back pain throughout the relevant time period, with at most an interruption of two days between Dr. Tate's termination of the morphine and gabapentin on November 8, 2009 and another doctor's renewal of gabapentin and prescription of Tylenol on November 10, 2009.  To rise to the level of an Eighth Amendment violation, a delay in treatment (or here, interruption of treatment) must cause substantial harm. Wood v. Housewright, 900 F. 2d at 1335.  There is no evidence of harm here.

Moreover, plaintiff's contention that Dr. Tate should have continued prescribing morphine in particular amounts to no more than a difference of opinion regarding appropriate treatment.  "A

11

difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not [without more] amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012). To establish that a difference of opinion rises to the level of deliberate indifference, a prisoner must show that the defendant's chosen course of treatment was medically unacceptable and in conscious disregard of an excessive risk to petitioner's health. Jackson, 90 F.3d at 332. No rational trier of fact could so find on the facts presented here. To the contrary, the record reflects that every other physician who attended plaintiff after November 8, 2009 prescribed some form of medication *other than morphine* (gabapentin, tramadol, ibuprofen, acetaminophen with and without codeine), either alone or in combination. Because no subsequent doctor has found morphine to be medically indicated for plaintiff's condition, Dr. Tate cannot have been deliberately indifferent in terminating it.

In defendant Tate's second encounter with plaintiff on May 2, 2011, he ordered that plaintiff be weaned off gabapentin and tramadol. The medical records before the court indicate that plaintiff has been treated with non-steroidal anti-inflammatory drugs since that time. Despite plaintiff's allegations that he subjectively experiences serious pain, which the court accepts at face value for present purposes, Dr. Tate has identified objective evidence in the medical record that provides a basis for a medical conclusion that nothing more than non-steroidal anti-inflammatory drugs was (or is) medically necessary. If Dr. Tate's medical judgment is wrong about that, he may arguably be negligent -- but negligence is insufficient to support an Eighth Amendment claim. Farmer, 511 U.S. at 835. In any case, there is no evidence to support a conclusion that Dr. Tate subjectively knew his actions in 2009 or in 2011 risked serious injury or the wanton infliction of suffering, and that he deliberately disregarded that risk. See Toguchi, 391 F.3d at 1057.

Because the court has determined that there is no genuine issue of material fact as to whether Dr. Tate acted with deliberate indifference, the court need not reach defendant's argument for qualified immunity.

Accordingly, IT IS RECOMMENDED that defendant Tate's motion for summary

judgment (ECF No. 114) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 10, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE