1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   VINCENTE SOLOMON,                    No.  2:10-cv-2103 WBS AC P

12              Plaintiff,

13        v.                              ORDER AND

14   J. NEGRETE, et al.,                  FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S. § 1983.

18   Pending before the court is defendants November 6, 2013 motion for summary judgment, which

19   has been fully briefed.  See ECF Nos. 121, 138, 140.  Also before the court is plaintiff's motion

20   for appointment of counsel and motion to stay filed May 5, 2014.  ECF No. 142.

21                          MOTION TO STAY

22        Plaintiff brought this motion to stay after filing his opposition to defendants' motion for

23   summary judgment.  Plaintiff has repeatedly complained that he has been obstructed at various

24   prisons in his efforts to litigate this and other pending cases.  See, e.g., ECF Nos. 10, 19, 33-34,

25   40, 84, 87, 93.  The court has extended itself to meet these frequent complaints, requiring

26   responses to plaintiff's allegations (see ECF Nos. 43, 52, 85, 92), extending plaintiff's deadlines

27   (see ECF Nos. 11, 13, 38, 60, 98, 125, 127), and providing copies of documents (see ECF Nos.

28   38, 42).  Plaintiff has repeatedly sought preliminary injunctive relief and court orders related to

                                        1

1   the alleged ongoing obstruction, seeking to obtain transfer (ECF No. 20, 22, 24, 28, 31, 40, 45,

2   49); a specific housing assignment (ECF No. 84); return of legal property (ECF No. 84, 87, 93);

3   law library access, copies of documents, and legal supplies (ECF Nos. 33, 37, 100, 102, 132);

4   specific medical care including pain medication (ECF Nos. 40, 41); a general prohibition on

5   further obstruction (ECF Nos. 34, 95); and an independent investigation of plaintiff's allegations

6   of obstruction (ECF No. 73).  All such requests (other than some requests for documents) have

7   been denied, most often as unsupported.  See ECF Nos. 21, 23, 27, 35, 36, 42, 55, 71, 85, 92

8   (specifically finding that plaintiff's complaints of being obstructed in the prosecution of this

9   action have not been substantiated), 98, 113, 134.

10          In his most recent filing, plaintiff avers that in October of 2013 his legal work, exhibits

11  and evidence were lost or destroyed by prison staff and that he has been denied law library

12  access.  ECF No. 142 at 1.  Plaintiff references four pending cases, including the instant one,

13  which have been impacted.  He also describes an incident that is alleged to have occurred in April

14  of 2014, in which prison staff confiscated his legal material, assaulted him, knocked out his teeth

15  and pepper-sprayed him because he asked to speak to the captain about his legal deadline of April

16  13, 2014 in the instant case.  Plaintiff states that he had (and presumably lost) over 20

17  declarations which supported his claims in this action that his civil cases are being systematically

18  sabotaged.  Id. at 1-2.  Plaintiff submits a number of inmate declarations and statements

19  describing the April 2014 incident,[1] but does not specifically identify or describe materials

20  necessary to oppose summary judgment in this case that were lost or destroyed.

21          "The District Court has broad discretion to stay proceedings as an incident to its power to

22  control its own docket."  Clinton v. Jones, 520 U.S. 681, 707 (1997) (citing Landis v. North

23  American Co., 299 U.S. 248, 254 (1936)).  "The proponent of the stay bears the burden of

24  establishing its need."  Id. at 708.  When ruling on a request to stay proceedings, the following

---

25  [1] ECF No. 142 at 5 (Declaration of Inmate Lamar Perkins); see also, id. at 9 (Declaration of

26  Inmate Carlos M. Flores); id. at 10-11 (Declaration of Inmate James L. Hampton); id. at 19
    (Declaration of Inmate Louis James).  Plaintiff also includes "witness" statements from a number

27  of inmates -- Edward Word, David Taft, Robert Guillebeau, Dwayne Martin, Arthur Ochoa,
    Gabriel Ruiz and Kevin L. Ward -- which are not signed under penalty of perjury.  ECF No. 142

28  at 12-13, 15-18, 20-23.

1   factors are considered: (1) "the possible damage which may result from the granting of a stay";

2   (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3)

3   "the orderly course of justice, measured in terms of the simplifying or complicating of issues,

4   proof, and questions of law which could be expected to result from a stay." Filtrol Corp. v.

5   Kelleher, 467 F.2d 242, 244 (9th Cir.1972) (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th

6   Cir.1962, in turn, citing Landis, supra, at 254-55.)).  The court, in considering a stay, should

7   "balance the length of any stay against the strength of the justification given for it." Young v.

8   I.N.S., 208 F.3d 1116, 1119 (9th Cir. 2000).

9        Plaintiff's allegations regarding the April 2014 use of force are very serious and very

10   troubling.  They might support a separate lawsuit.  They do not, however, relate to the claims at

11   issue in this lawsuit.  Nor are they germane to the adjudication of the present dispositive motion.

12   The court finds that a stay of this action is unwarranted, primarily because plaintiff has not carried

13   his burden of demonstrating the need for a stay.  A stay should not be imposed on the basis of

14   conclusory allegations that non-parties are seeking to impede plaintiff's pursuit of this action.

15   The All Writs Act, 28 U.S.C § 1651, provides authority for this court to inquire into any such

16   interference, as this court has done on prior occasions when appropriate.  Here, although plaintiff

17   provides witness declarations to support his excessive force allegations, he has not produced

18   concrete evidence that his ability to prosecute this lawsuit has been impeded by the events of

19   October 2013 or April 2014.  Conclusory allegations of interference do not support a stay or

20   require further inquiry at this time.

21        Plaintiff submitted his opposition to the pending motion for summary judgment on April

22   6, 2014 (see ECF No. 142 at 2), prior to the alleged assault.  Accordingly, the assault cannot have

23   interfered with his ability to oppose the motion.  Moreover, although plaintiff states that prison

24   staff confiscated or destroyed 20 declarations, he does not explain how (if at all) any of those

25   declarations related to the summary judgment motion.  He fails to specify whose affidavits were

26   destroyed and what they said.  In the opposition itself, plaintiff demands that the court order that

27   he be allowed fifty (50) non-collect phone calls and direct all of his witnesses to file declarations

28   and affidavits on his behalf.  ECF No. 138 at 120.  Plaintiff misunderstands the function of the

1    court.  The court cannot act as plaintiff's counsel.  It is plaintiff, who has brought this case, who is

2    responsible for compiling the evidence he needs to proceed.  In other abbreviated declarations

3    attached to the opposition, plaintiff names staff and inmate witnesses who he states have sworn to

4    testify on his behalf but he does not allege that they have ever provided him with any affidavits or

5    were prevented from doing so.  Id. at 122.  This record does not support a stay of the proceedings.

6    Plaintiff has not established that the interests of justice weigh against adjudication of the fully-

7    briefed summary judgment motion or otherwise require a stay.

8           Plaintiff also contends that he cannot proceed because he is undergoing medical treatment.

9    While the court is mindful of the inconvenience to plaintiff of undergoing medical treatment

10   while pursuing this action, this is hardly a unique circumstance.  While plaintiff may continue to

11   seek discrete extensions of time related to his medical condition or any other circumstance that

12   interferes with his ability to meet a particular deadline, he has not justified a blanket stay of

13   proceedings.

14          Defendants' summary judgment motion was filed on November 6, 2013, and plaintiff

15   received extensions of time that gave him a total of five months to oppose the motion.  See ECF

16   No. 125, 127, 133.  He has done so.  ECF No. 138.  Moreover, in pro se prisoner cases the court

17   does not rely on a plaintiff's opposition alone, or strictly apply the rules for opposing motions

18   brought under Rule 56 of the Federal Rules of Civil Procedure or with the Local Rules.  See, e.g.,

19   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (cautioning district courts not to apply,

20   inter alia, "summary judgment rules strictly" to prisoner pro se plaintiffs); McElyea v. Babbitt,

21   833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (a verified complaint may be considered in

22   opposition to summary judgment if "it is based on personal knowledge and sets forth specific

23   facts admissible in evidence.").  In this case the court will consider the entire record of the case,

24   including potentially relevant exhibits that plaintiff has submitted with other filings including

25   previous, now-superseded versions of the complaint.  See Fraser v. Goodale, 342 F.3d 1032, 1036

26   (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary

27   judgment); see also Aholelei v. Hawaii Dept.of Public Safety, 220 Fed. Appx. 670 *1(9th Cir.

28   2007) (district court abused its discretion in not considering plaintiff's evidence at summary

1  judgment, "which consisted primarily of litigation and administrative documents involving

2  another prison and letters from other prisoners" which evidence could be made admissible at trial

3  through the other inmates' testimony at trial).  In these circumstances, the court finds that all

4  factors weigh in favor of proceeding with this action, and will recommend plaintiff's motion for a

5  stay be denied.

6  REQUEST FOR APPOINTMENT OF COUNSEL

7        Plaintiff again requests that the court appoint counsel.  District courts lack authority to

8  require counsel to represent indigent prisoners in section 1983 cases.  Mallard v. United States

9  Dist. Court, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may request an

10  attorney to voluntarily to represent such a plaintiff.  See 28 U.S.C. § 1915(e)(1).  Terrell v.

11  Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36

12  (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the court must

13  consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to

14  articulate his claims pro se in light of the complexity of the legal issues involved.  Palmer v.

15  Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to

16  appoint counsel).  The burden of demonstrating exceptional circumstances is on the plaintiff.  Id.

17  Circumstances common to most prisoners, such as lack of legal education and limited law library

18  access, do not establish exceptional circumstances that warrant a request for voluntary assistance

19  of counsel.

20        Having considered the factors under Palmer, the court finds that plaintiff has failed to

21  meet his burden of demonstrating exceptional circumstances warranting the appointment of

22  counsel at this time.  Plaintiff has been able to set forth colorable claims in his first amended

23  complaint while proceeding pro se, and has opposed defendants' motion for summary judgment.

24  Plaintiff's most recent request for appointment of counsel is denied.

25  BACKGROUND

26        Plaintiff proceeds against twelve defendants.[2]  The following claims were found

27  _____

28  [2] In the original three hundred (300) page complaint, which was dismissed with leave to amend, plaintiff named over one hundred defendants.  See ECF Nos. 1, 9.  Nearly thirty defendants were

1  cognizable as to the now-remaining defendants upon screening of the first amended complaint:

2  (1) plaintiff's claim of retaliation against defendants Torres,[3] Norgaard, and Wright, for placing

3  and retaining plaintiff in the SHU[4] from December 31, 2006 to July 28, 2007 in retaliation for

4  having filed a grievance against defendant Torres; (2) a claim of retaliation against defendant

5  Stallcup for her alleged actions following the filing of a grievance by plaintiff; (3) a claim of an

6  Eighth Amendment violation by defendants Vasquez, Medrano and Barajas for use of excessive

7  force, and a realted First Amendment claim of retaliation, regarding a pepper-spraying incident

8  and its aftermath; (4) a claim of retaliation against defendants Garcia, Lundy, Campbell, Franco

9  and Prior, regarding plaintiff's complaints about having been pepper-sprayed.  See ECF No. 35

10  (Order adopting findings and recommendations at ECF No. 27); see also ECF No. 25 (First

11  Amended Complaint).  Plaintiff seeks money damages.

12  MOTION FOR SUMMARY JUDGMENT

13  Defendants Barajas, Campbell, Franco, Garcia, Torres, Lundy, Medrano, Norgaard, Prior,

14  Stallcup, Vasquez, and Wright move for summary judgment on the grounds that they did not

15  violate plaintiff's rights under the First and Eighth Amendments, contending that (1) Torres,

16  Norgaard, and Wright did not place plaintiff in administrative segregation because of a complaint

17  he filed against defendant Torres, and they would have taken the same action regardless of any

18  complaint he filed; (2) defendant Stallcup did not retaliate against plaintiff by recommending a

19  reduction in his level of mental-health care, and she would have taken the same action regardless

20  of any complaint he filed; (3) defendants Barajas, Medrano, and Vasquez did not use any force on

21  plaintiff on February 4, 2011, and their use of force against others was necessary to restore order;

22  (4) defendants Barajas, Medrano, and Vasquez did not deny plaintiff medical care on February 4,

23

24

25  dismissed from the first amended complaint (ECF No. 25) upon screening.  See Order, ECF No.
    35 (adopting June 21, 2011 findings and recommendations, ECF No. 27).  Defendant Tate's

26  motion for summary judgment was granted by Order filed on March 14, 2014 (adopting the
    February 11, 2014 findings and recommendations, ECF No. 127).

27  [3] Defendant Torres now uses the name Hazelton.  For consistency with the pleadings and with
    past orders, the court will continue to refer to her as Torres here.

28  [4] Segregated or Security Housing Unit.

1    2011, in retaliation for his assertion that he would report their use of force;[5] (5) defendants

2    Campbell, Franco, Garcia, Lundy, and Prior did not place plaintiff in administrative segregation

3    (ad seg) in retaliation for his having filed a complaint about the events of February 4, 2011, but

4    because of his allegations that staff had threatened him; and (6) all defendants are entitled to

5    qualified immunity.  ECF No. 121 (notice of motion and motion for summary judgment).

6        I.        Legal Standard for Rule 56 Motions

7            Summary judgment is appropriate when the moving party "shows that there is no genuine

8    dispute as to any material fact and the movant is entitled to judgment as a matter of law."

9    Fed.R.Civ.P. 56(a).  Under summary judgment practice, the moving party "initially bears the

10   burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities

11   Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323,

12   (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the

13   record, including depositions, documents, electronically stored information, affidavits or

14   declarations, stipulations (including those made for purposes of the motion only), admission,

15   interrogatory answers, or other materials" or by showing that such materials "do not establish the

16   absence or presence of a genuine dispute, or that the adverse party cannot produce admissible

17   evidence to support the fact."  Fed.R.Civ.P. 56(c)(1)(A), (B).  When the non-moving party bears

18   the burden of proof at trial, "the moving party need only prove that there is an absence of

19   evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex,

20   477 U.S. at 325.); see also Fed.R.Civ.P. 56(c)(1)(B).  Indeed, summary judgment should be

21   entered, after adequate time for discovery and upon motion, against a party who fails to make a

22   showing sufficient to establish the existence of an element essential to that party's case, and on

23   which that party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A]

24   complete failure of proof concerning an essential element of the nonmoving party's case

25   necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

26   _____

27   [5] In their notice of motion, counsel for defendants actually stated as to no. 4 above that Barajas, Medrano, and Vasquez *did* deny plaintiff medical care on February 4, 2011, in retaliation for his having stated that he would report their use of force (see ECF No. 121 at 2 [emphasis added]);

28   however, that is quite obviously a typographical error.

1    should be granted, "so long as whatever is before the district court demonstrates that the standard

2    for entry of summary judgment . . . is satisfied." Id. at 323.

3         If the moving party meets its initial responsibility, the burden then shifts to the opposing

4    party to establish that a genuine issue as to any material fact actually does exist. See Matsushita

5    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

6    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

7    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

8    admissible discovery material, in support of its contention that the dispute exists.  See

9    Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate

10   that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under

11   the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.

12   Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the

13   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

14   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).

15        In the endeavor to establish the existence of a factual dispute, the opposing party need not

16   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

17   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

18   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

19   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

20   Matsushita, 475 U.S. at 587 (citations omitted).

21        "In evaluating the evidence to determine whether there is a genuine issue of fact," the

22   court draws "all reasonable inferences supported by the evidence in favor of the non-moving

23   party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir.2011).  It is

24   the opposing party's obligation to produce a factual predicate from which the inference may be

25   drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd,

26   810 F.2d 898, 902 (9th Cir.1987).  Finally, to demonstrate a genuine issue, the opposing party

27   "must do more than simply show that there is some metaphysical doubt as to the material facts....

28   Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

1  party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

2      In applying these rules, district courts must "construe liberally motion papers and

3  pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly."

4  <u>Thomas v. Ponder</u>, 611 F.3d at 1150.  However, "[if] a party fails to properly support an assertion

5  of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the

6  court may: . . . consider the fact undisputed for purposes of the motion. . . ."  Fed. R. Civ. P.

7  56(e)(2).  Plaintiff was provided notice of the requirements for opposing a motion pursuant to

8  Rule 56, as required by <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), <u>Klingele</u>

9  <u>v. Eikenberry</u>, 849 F.2d 409 (9th Cir.1988), and <u>Woods v. Carey</u>, 684 F.3d 934 (9th Cir. 2012).

10  ECF Nos. 53, 122.

11      II.      <u>Plaintiff's Retaliation Claim Against Torres, Norgaard and Wright</u>

12      Plaintiff claims that defendants Torres, Norgaard, and Wright placed and retained him in

13  the SHU from December 31, 2006 to July 28, 2007 in retaliation for plaintiff's previous grievance

14  against Torres.  First Amended Complaint (FAC), ECF No. 25 at 3.

15      Defendant Torres contends that plaintiff was placed in administrative segregation (ad seg)

16  after plaintiff threatened her, and was thereafter retained in ad seg while related disciplinary

17  proceedings were pending.  MSJ, ECF No. 121-1 at 2.

18      A.  <u>Legal Principles Governing First Amendment Retaliation Claim</u>

19      Inmates have a right to be free from the filing of false disciplinary charges in retaliation

20  for the exercise of constitutionally protected rights.  <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir.

21  1995); <u>Schroeder v. McDonald</u>, 55 F.3d 454, 461 (9th Cir. 1995); <u>Rizzo v. Dawson</u>, 778 F.2d

22  527, 532 (9th Cir. 1985).  The Ninth Circuit treats the right to file a prison grievance as a

23  constitutionally protected First Amendment right.  <u>Brodheim v. Cry</u>,  484 F.3d 1262, 1269 (9th

24  Cir. 2009) (citing <u>Rhodes v. Robinson</u>, 408 F.3d 559, 566 (9th Cir. 2005)); <u>Bruce v. Ylst</u>, 351

25  F.3d 1283, 1288 (9th Cir. 2003); <u>see also</u>, <u>Hines v. Gomez</u>, 108 F.3d 265 (9th Cir. 1997); <u>Hines</u>

26  <u>v. Gomez</u>, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance

27  procedure is a constitutionally protected right) (cited with approval in <u>Bradley v. Hall</u>, 64 F.3d

28  1276, 1279 (9th Cir. 1995)); <u>Graham v. Henderson</u>, 89 F.3d 75 (2nd Cir. 1996) (retaliation for

1  pursuing a grievance violates the right to petition government for redress of grievances as

2  guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d 677, 679-80

3  (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing

4  prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary

5  actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854 F.2d 584, 589

6  (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is

7  precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation

8  omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for

9  complaint about food actionable).

10       In order to state a retaliation claim, a plaintiff must plead facts which suggest that

11  retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

12  behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

13  Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

14  correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).

15  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d

16  136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim,

17  because "a mere naked threat" is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810

18  F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

19  prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

20  constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

21       To state a claim for First Amendment retaliation, a prisoner must
         allege the following five elements: (1) a state actor took an adverse
22       action against him (2) because of (3) the prisoner's protected
         conduct, and that the action taken against him (4) chilled the
23       prisoner's exercise of his First Amendment Rights and (5) did not
         reasonably advance a legitimate correctional goal.
24

25  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011).

26       B.  Undisputed Facts

27       The court finds the following facts to be undisputed:

28       •  In December 2006, plaintiff was housed in cell 131 of Building 4 on Facility D at

10

High Desert State Prison (HDSP).  Motion for Summary Judgment (MSJ), Declaration of defendant S. Torres, ECF No. 123-6, ¶¶ 2-3.

- Defendant Torres was a Building 4 floor officer whose duties included supervising and escorting Building 4 inmates and conducting random cell searches in the housing unit.  Hazelton Dec. ¶ 2.

- Defendant Torres and her partner conducted a search of plaintiff's cell on December 31, 2006, during which plaintiff was removed from his cell and after which he and his cellmate were returned to the cell.  Hazelton Dec.  ¶¶ 4-5.

- According to Torres, during the search plaintiff shouted at the officers, expressing his disagreement with the search.  Hazelton Dec. ¶ 4.

- On January 1, 2007, plaintiff filed an inmate appeal/staff complaint against Torres, complaining that on Dec. 31, 2006, she had "lied" and been "very disrespectful and unprofessional," had used a racial epithet against him, had said she would make him "suck her dick," would pay plaintiff's cellmate to force plaintiff to "suck his dick" and would "kick [his] ass."  The inmate appeal states that she had plaintiff placed in ad seg for threatening her but that he had in no way done so. Opposition (Opp.), ECF No. 138 at 19,[6] HDSP-S log no. 07-0083.

- Plaintiff's grievance was processed as a staff complaint, plaintiff was interviewed, witnesses were questioned, the results were kept confidential as a confidential personnel matter and the appeal was ultimately denied, on July 26, 2007, at the third level.  Opp., ECF No. 138, HDSP-S log no. 07-0083, at 19-26.

- Defendant Torres signed a typed Rules Violation Report (RVR) on January 8, 2007, charging plaintiff with obstructing a peace officer by means of threat and stating that on December 31, 2006 at about 10:50 a.m., she had "just completed conducting a cell search of" plaintiff's cell when "he began to yell obscenities and threatened me by saying, 'Let me out of this cell and I'll kick yo ass, bitch!  Suck

---

[6] Page numbers are those imposed by the court's electronic filing system.

my dick!'  I took this as a threat to my safety."  ECF 123-6, Hazelton Dec. ¶¶ 6, 8; MSJ, Exhibit A, Rules Violation Report (RVR), Log No. FD-06-12-066, ECF No. 123 at 4.

- Defendant Torres declares that she informed her supervisor of plaintiff's threats immediately and plaintiff was sent to administrative segregation on December 31, 2006.  Hazelton Dec. ¶ 7; ECF No. 123, Ex. A at 17, Administrative Segregation Placement Notice, dated Dec. 31, 2006, attached to, ECF No. 123 at ¶ 2, Declaration of Diana Esquivel.

- The placement notice states that plaintiff was being placed in ad seg for "threats toward staff," further stating, in part, that plaintiff had made the statement "'I am going to kick your ass when you open this door,'" which "was perceived as a threat toward staff" for which he was deemed "a threat to the safety and security of this institution."  It was stated that plaintiff would remain in ad seg "pending administrative review for your program/housing needs."  ECF No. 123 at 17.

- Defendant Wright's signature is on the placement notice identifying himself as the correctional administrator who reviewed it on January 2, 2007.  Id.

- On January 4, 2007, plaintiff appeared before the classification committee for his initial review after his ad seg placement. Defendant Counselor Norgaard and defendant Facility Captain/Acting Associate Warden Wright were members of the committee.  ECF No. 123-9, Declaration of M. Norgaard, ¶¶ 2-3; ECF No. 123-13, Declaration of M.Wright, ¶¶ 2-4; ECF No. 123, Ex. A at 18, Classification Chrono, dated Jan. 4, 2007.

- The committee recommended keeping plaintiff in ad seg pending because the RVR for threatening staff was pending.  Another classification hearing was scheduled for April 5, 2007.  The Classification Staff Representative (CSR), on January 23, 2007, agreed with the committee's recommendation, ordering that plaintiff remain in ad seg for ninety days and to return to CSR for a status update "no later than 4/4/2007."  Norgaard Dec. ¶¶ 4-6; Wright Dec. ¶¶ 5-7; Classification Chrono,

dated Jan. 4, 2007; ECF No. 123, Ex. A at 19, CSR Action Chrono, dated Jan. 23, 2007.

- On February 7, 2007, plaintiff was found guilty based on the RVR, Obstructing a P/O by the means of Threat, issued by defendant Torres.  ECF No. 123-6, Hazelton Dec. ¶ 10; ECF No. 123 at 4-9, Ex. A, RVR, Log No. FD-06-12-066.

- The RVR shows defendant Wright reviewed the report of the hearing on February 16, 2007 and non-party R. K. Wong signed off on it as chief disciplinary officer on February 20, 2007.  ECF No. 123 at 1.

- Defendants Norgaard and Wright were members of the classification committee before whom plaintiff appeared on April 5, 2007.  Norgaard and Wright declare the committee recommended imposing a nine-month term in the security housing unit (SHU) based on the prison disciplinary guilty finding and transferring plaintiff to a prison with a SHU facility.  ECF No. 123-9, Norgaard Dec. ¶ 8; ECF No. 123-13, Wright Dec. ¶ 8; ECF No. 123 at 20, Ex. A, Classification Chrono, dated April 5, 2007.

- The April 5 classification chrono states that the committee acted to "[a]ssess and impose a 9-month Aggravated SHU Term" based on the Dec. 31, 2006 RVR, also noting that plaintiff was placed in ad seg "on 12/31/06 for threats toward staff," that he "was found guilty of SHU-able RVR Log # FD-06-12-066 dated 12/31/06 for Obstructing a Peace Officer by means of a Threat. . . ." and that "[t]he SHU term was not mitigated due to prior disciplinary behavior and aggravated 4-months based upon" an October 2000 RVR log #S/00-10-0021, charging plaintiff with "threat to kill or assault a non-inmate."  It was also noted that his credit loss was consistent with "a division 'D' offense." ECF No. 123 at 20.

- In a note on the subject RVR, dated April 5, 2007, the CDO, R.K. Wong, had noted: "per ICC review[:] modify specific charge to "threatening a P.O." Div E offense 60 days LOC [sic] –" ECF No. 123 at 4.

- On April 24, 2007, the CSR rejected the committee's recommendation on the

1    ground that plaintiff was found guilty of a charge different from that originally

2    charged in the RVR.  The CSR referred the matter back to the Chief Disciplinary

3    Officer for further review and disposition.  Norgaard Dec. ¶ 9; Wright Dec. ¶ 10;

4    ECF No. 123 at 21, Ex. A, CSR Action Chrono, dated April 24, 2007.

5    • The April 24, 2007 CSR Action Chrono deferral states:

6    The case was referred for a SHU Term audit relative to the RVR of
     12/31/2006 that originally charged and found the inmate [sic] with
7    Obstructing a P/O by the means of Threat.   The RVR was
     adjudicated on 2/7/07 and sign [sic] off by a CDO on 2/20/07
8    accepting the guilty findings as they were.

9    On 4/5/07 a CDO modified the charges and guilty findings to
     Threatening a P/O with ICC assessing a 9-momth aggravating SHU
10   Term on the same date.

11   Although CCR 3312(b)(2) allows for a rehearing, it only allows for
     a rehearing when, at the time of the hearing, upon discovery of
12   information or evidence not available or reasonably discoverable at
     the time to the disciplinary action.  The charges shall not result in a
13   greater penalty or more severe action that the originally taken [sic.]

14   There is no documentation that supports staff receiving additional
     information 1 ½ months later that would support the modification
15   to the charges and the guilty findings.  The inmate was informed as
     to what he was being found guilty of and if the charges needed to
16   [sic] modified, the CDO should have order [sic] the RVR to be
     reissued at the time of his review.

17

18   **Please refer the case back to the CDO for review and
     appropriate disposition**.

19   • On May 17, 2007, plaintiff appeared before the classification committee of which

20   defendants Norgaard and Wright were members.  ECF No. 123-9, Norgaard Decl.

21   ¶ 10; ECF No. 123-13, Wright Dec. ¶ 11; ECF No. 123 at 22-23, Classification

22   Chrono, dated May 17, 2007.

23   • At the May 17th hearing, the April 5, 2007 ICC action was rescinded.  It was also

24   noted the nine month aggravated SHU term imposed on April 5th "was

25   inappropriate" because the RVR relied on was more than five years old.

26   • The committee disagreed with the CSR's actions, instead recommending a mid-

27   range five-month SHU term for plaintiff's having been found guilty of the RVR

28   which meant that his release date from the SHU would have been April 24, 2007, a

14

date which had occurred more than three weeks prior to the committee hearing. ECF No. 123-9, Norgaard Decl. ¶ 10; ECF No. 123-13, Wright Dec. ¶ 11; ECF No. 123 at 22-23, Classification Chrono, dated May 17, 2007.

- Noting that the SHU MERD was expired, the committee "elected to retain" plaintiff in ad seg because the committee felt releasing him to HDSP general population posed a safety/security threat because the staff member [defendant Torres] was still employed at HDSP and "due to possible animosity between the inmate and staff…"  Further, the committee posited that plaintiff would benefit from a transfer to the general population at a different prison.  Id.

- Defendant Norgaard issued a new lock-up order (CDC 114-D) for plaintiff which stated that plaintiff had originally been placed in the ad seg unit based on the 12/31/06 RVR which resulted in a guilty finding on a five-month SHU term which had expired on 4/24/07 (MERD).  The May 17, 2007 ICC review was noted as was his retention passed the expiration date in SHU due to safety and security concerns and that based on the RVR he was being retained beyond the expired SHU date pending transfer.  The CDC 114-D was signed by defendant Norgaard and dated May 23, 2007; plaintiff refused to sign it, according to the document; defendant Wright approved it on May 24, 2007.  ECF No. 123-9 ¶ 12; ECF No. 123-13, Wright Dec. ¶ 12; ECF No. 123 at 24, Administrative Segregation Unit Placement Notice, dated May 23, 2007, Ex. A, 21.)

- On June 20, 2007, the CSR rejected the committee's recommendation to impose a midrange SHU term against plaintiff based on the RVR guilty finding because plaintiff could not be found guilty of the modified charge in the RVR since he not been given proper notice of the modified charge and had not had an opportunity to prepare for the disciplinary hearing on that charge.  The matter was referred the matter back to the CDO for further action consistent with the CSR's findings.  Norgaard Dec. ¶ 13; Wright Dec. ¶ 14; ECF No. 123 at 25, CSR Action

Chrono, dated June 20, 2007.[7]

- On July 10, 2007, the CDO, identified as R. Wong, ordered the RVR re-issued; around July 13, 2007, three days later, defendant Torres re-issued the RVR for the December 31, 2006 incident.  Hazelton Dec. ¶ 12; ECF No. 123, Rules Violation Report, Ex. A, at 10-16.

- The re-issued RVR defendant Torres signed contained the same information as she had included in the original with additional information unrelated to her encounter with the plaintiff on December 31, 2006.  Id.

- On July 26, 2007, plaintiff went before classification committee, which included defendants Norgaard and Wright as members.  The mid-range May 17, 2007 SHU term was vacated along and he was ordered returned to Facility D pending adjudication of the reissued RVR.  Defendant Norgaard Dec. ¶ 14; Defendant Wright Dec. ¶ 15; ECF No. 123 at 23, Classification Chrono, dated July 26, 2007.

- Plaintiff was released from ad seg on or abput July 28, 2007.  (Defendants Norgaard and Wright aver that plaintiff was released from ad seg to HDSP Facility D shortly after July 26, 2007, and plaintiff has alleged he was held in ad seg until

---

[7] "Case re-referred for SHU audit subsequent to CSR deferral of 4/24/07. The basis of the deferral in part involved the inmate being charged and found guilty of a non-SHUable offense. The CDO audit approved the hearing disposition and then one and a half months later the same CDO modified the charge to an offense which includes the requirement to address a SHU term resulting in greater sanctions. [¶] Today's CSR review recognizes that the circumstances of the RVR clearly support a charge of Threatening a Non-Inmate; however that was not the charge of the adjudicated RVR.  The inmate was not afforded the opportunity to prepare for the modified charge in preparation of a due process hearing and although threatening behavior is described in the RVR the fact remains that Threatening a Non-Inmate is not a lesser included offense of Obstructing a Peace Officer by Means of Threat.  The modified charge is inappropriate. Staff position relative to the 2003 policy memorandum is noted but irrelevant to the issue of appropriate notice of a pending charge and a fair hearing.  [¶] **Please refer case to the CDC and ICC.  If staff continue to deem the inmate a threat to institution security then evaluation and referral for SHU indeterminate may be appropriate.  If staff disagrees with the basis of this deferral that referral to the Director's Review Board will be required for resolution. Return to CSR no later than 7/6/2007 with status update**." June 20, 2007 CDC 128G chrono, ECF No. 123 at 25 (rejection by the CSR, with a "comment: deferred" and a 15-day ad seg extension approved so that the basis of the deferral could be addressed).

July 28, 2007.[8]) Norgaard Dec. ¶ 16; Wright Dec. ¶ 17; ECF No. 25 at 3.

- At the August 29, 2009 hearing on the re-issued RVR, plaintiff was found guilty of "obstructing a peace officer by means of threat."  ECF No. 123 at 13-16, Rules Violation Report.

- Plaintiff's own exhibits as well as those of defendants demonstrate that he has an extensive prison disciplinary history extending from 1999.  See ECF No. 1 (exhibit to plaintiff's dismissed/superseded original complaint at 72; ECF No. 25 (exhibit to plaintiff's first amended complaint) at 12, setting forth some 17 RVR's for a variety of misconduct dating from March 20, 1999 through November 20, 2007; see also, Opposition, ECF No. 138 at 18 (classification chrono).

C.    Disputed Facts

- Plaintiff in his verified complaint alleges he was retained in the SHU from December 31, 2006 until July 28, 2007 in retaliation for having filed a complaint against defendant Torres after she had at some point threatened that she would pay other inmates to beat, rape and kill plaintiff.  ECF No. 25 at 3.

- According to Torres, when the cell door closed on December 31, 2006, plaintiff yelled at and threatened her, calling her a "bitch" and other profanities, stating that he would "kick [her] ass."  Torres declares that none of her actions were motivated by plaintiff's having filed a 602 inmate appeal, and that she was not aware of any such or complaint plaintiff had filed against her or prison staff at the time she searched plaintiff's cell, informed her supervisor of plaintiff's threats, or issued the RVR.  Hazelton Dec. ¶¶ 6, 9, 17.

- Defendant Torres declares she was not involved in the decisions to place and retain plaintiff in administrative segregation.  ECF No. 123-6, Hazelton Dec. ¶¶ 10-11,

---

[8] Plaintiff was apparently placed in ad seg again on August 3, 2007 because he was a victim of a battery.  See Opp., ECF No. 138 at 31-32.  Although the placement was evidently reviewed and approved by defendant Wright, it is unrelated to ad seg placement at issue against defendants Torres, Norgaard and Wright.  Id.  In a subsequent CDC 114, it appears that plaintiff received an RVR while in ad seg on this placement for "battery on a peace officer."  Id. at 33.

13-15.

- Defendants Norgaard's and Wright's actions and recommendations on January 4, April 5, May 17 and July 26, 2007, were based on the information available to them.  They determined a proper course of action based on the needs and best interests of the prison, staff, and plaintiff.  Defendants aver they neither recommended nor heard anyone recommend that plaintiff remain in ad seg because he filed a 602 or complaint against prison staff.  ECF No. 123-9, Norgaard Dec. ¶¶ 5, 8, 11, 15; ECF No. 123-13, Wright Dec. ¶¶ 6, 9, 13, 16.

- Plaintiff insists that he was told that defendants Torres, Wright and Norgaard were "punished" for their actions.  He contends that Wright and Norgaard covered up for Torres' misconduct in threatening him.  ECF No. 25 at 3.  ECF No. 138 at 2-3.

D.    Discussion

1.    Defendant Torres

To proceed on his retaliation claim, plaintiff must identify evidence supporting a conclusion that the defendant's adverse actions were motivated in substantial part by intent to retaliate for protected conduct.  See Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Soranno's Gasco, 874 F.2d at 1314.  There can be no retaliatory intent without knowledge of the protected activity at issue.  For this reason, the claim against Torres fails if plaintiff lacks evidence to support a conclusion that she knew about plaintiff's prior complaint against her when she searched his cell on December 31, 2006 and/or wrote the ensuing RVR.  Torres has presented a sworn declaration averring that she had no such knowledge.  Although plaintiff disputes the accuracy and veracity of her declaration (and most of defendants' other evidence), he does not identify – and the court's careful review of the record has not revealed – any evidence that contradicts Torres' declaration in this regard.  Nor is there any circumstantial evidence that would support a contrary conclusion.  The absence of such evidence renders all other factual disputes immaterial.[9]

---

[9] Plaintiff has identified factual disputes regarding what happened between himself and defendant Torres on December 31, 2006.  The court notes that the disciplinary hearing record does not fully

18

1    Plaintiff asserts that a witness named Jimmy McMillian heard Torres state that "she was

2    going to pay other inmates to rape, assault and have me killed."  Opp. ECF No. 138 at 1-2.  There

3    is no declaration from McMillian, however.  Plaintiff further asserts that a "confidential memo"

4    dated March 5, 2006 documents that Torres "put out a hit on" him when the two of them "had a

5    disagree[]ment."  Id. at 2.  Plaintiff provides nothing other than the unsworn assertions in his

6    opposition to support the existence of such a memo.[10]  Plaintiff also claims he "was told" that

7    defendant Torress "was punished," but that such punishment is kept confidential.  ECF No. 138 at

8    3.  Again, no evidence is presented.  To defeat summary judgment, plaintiff must produce

9    evidence of retaliatory intent that is admissible or could be made admissible at trial. See

10   Matsushita, 475 U.S. at 586 n. 11; Fraser v. Goodale, 342 F.3d at 1036.  Nothing in the record

11   before the court meets this standard.  Even more fundamentally, plaintiff has not produced or

12   specifically identified any inmate appeal or appeals that he filed regarding Torres prior to

13   December 31, 2006.  The existence of protected First Amendment activity is an essential

14   predicate for a retaliation claim.  See Pratt, 65 F.3d at 807.  Because defendants have identified

15   the absence of evidence to support an essential element of plaintiff's claim, summary judgment is

16   appropriate.  See Celotex, 477 U.S. at 322.

17   Moreover, plaintiff has identified no evidence suggesting an absence of legitimate

18   correctional goals for the ad seg placement he contends was retaliatory.  See Pratt at 806.

19   Plaintiff vigorously disputes the charge that he threatened Torres, and insists that she in fact

20   threatened him.  However, the administrative segregation of an inmate during the process of

21   resolving such a dispute about such alleged misconduct, in order to maintain institutional security,

22   remains a legitimate correctional goal.  The validity of the disciplinary finding is not before the

23   court.  Plaintiff has not raised a genuine dispute of fact regarding the legitimacy of defendants'

24   

25   support either plaintiff's or Torres's versions of events.  These disputes are not material to the
     retaliation claim, however, and do not warrant discussion here.

26   [10] Culling through the accumulated hundreds of pages of plaintiff's exhibits, the undersigned did
     locate a reference in an unrelated 2008 memorandum to confidential memoranda dated January

27   10, 2005 and March 5, 2005, from review of which it was "found that [plaintiff] has safety
     concerns which may be due to his disrespectful behavior toward other races."  FAC, ECF No. 25

28   at 11.  This provides no support for the allegation that Torres sought to have him killed.

1   asserted penological justification for his ad seg placement.  This failure of proof provides

2   alternative grounds for summary judgment.

3   2.      Defendants Norgaard and Wright

4        It is undisputed that defendants Norgaard and Wright were involved in retaining plaintiff

5   in ad seg on the basis of a prison disciplinary finding that was twice rejected by the CSR.

6   Although plaintiff might believe that these actions violated his right to due process, this matter

7   proceeds on a claim of retaliation for having filed a previous grievance against defendant Torres.

8   As the court has already explained in regards to Torres, the claim cannot proceed without

9   evidence that plaintiff engaged in protected activity, that these defendants knew about that

10  activity, and that their actions related to plaintiff's ad seg placement were motivated by that

11  knowledge.  Plaintiff has identified no evidence to establish the facts essential to retaliatory

12  intent.

13       As previously noted, plaintiff has not produced or even specifically identified the

14  grievance for which the defendants allegedly retaliated.  Plaintiff has identified no evidence that

15  would establish Norgaard's or Wright's knowledge of such a grievance.  These defendants have

16  presented evidence that their actions related to plaintiff's ad seg placement were motivated by

17  legitimate considerations of security pending disciplinary proceedings (whether or not the

18  continued ad seg placement was appropriate, a question that is not material to the claim), and

19  plaintiff has identified no potentially admissible evidence that supports a contrary conclusion.

20  Plaintiff's own disbelief of defendants' evidence does not create a triable issue.

21       In opposition to summary judgment, plaintiff focuses on his theory that Norgaard and

22  Wright failed to protect him when in July 2007 they placed him back in the building where Torres

23  was working, and where he was assaulted by other inmates a few days later.  Opp., ECF No. 138

24  at 3.  Plaintiff asserts that he was told by defendants Norgaard and Wright on May 24, 2007 that

25  they were going to transfer him because his life was in danger from defendant Torres.  Id. at 2.

26  Plaintiff is not proceeding against these defendants on a failure to protect claim.  The procedural

27  irregularities in plaintiff's RVR disposition and ad seg retention raise genuine fairness concerns.

28  That is not enough to proceed to trial on a retaliation claim, however.  Because plaintiff has not

1    identified evidence to support retaliatory intent on the part of Norgaard or Wright, these

2    defendants are entitled to summary judgment.

3         III.       Plaintiff's Retaliation Claim Against Defendant Stallcup

4              Plaintiff alleges that defendant Stallcup retaliated against him by arguing for his removal

5    from the EOP level of mental health care at an Interdisciplinary Treatment Team (IDTT) session

6    that she attended on December 10, 2009, on the false basis that he posed a danger to other EOP

7    inmates.  ECF No. 25 at 70-71.  Plaintiff alleges that she did this because he had filed a grievance

8    against her over his failure to have been transferred to an EOP facility.  Id.

9              Defendant Stallcup asserts that the reduction of plaintiff's level of care from EOP to

10   CCCMS occurred because he was not benefitting from the higher level of mental health

11   treatment, and had nothing to do with any 602 or lawsuit by plaintiff against California

12   Correctional Institution staff.  MSJ, ECF No. 121-1 at 2.

13        A.       Undisputed Facts

14   •    Plaintiff was transferred to California Correctional Institution (CCI) in September

15        2009 and at that time was receiving mental-health services at the Clinical Correctional

16        Case Management System (CCCMS) level on Facility 4A at CCI.   ECF No. 123-11,

17        Declaration of B. Stallcup, ¶¶ 2, 5; plaintiff's medical records, attached to Esquivel

18        Dec. at Ex. B, 28-29

19   •    Defendant Stallcup, licensed as a psychologist in California since October 2008, was

20        employed by CDCR as a clinical psychologist at CCI from 2009 to 2010.   ECF No.

21        123-11, Stallcup Dec. ¶ 1.

22   •    In early October 2009, plaintiff's mental-health care provider recommended

23        increasing his level of care from CCCMS to the Enhanced Outpatient (EOP) level; on

24        October 15, 2009, plaintiff was placed at the EOP level of care.  Stallcup Dec. ¶ 5;

25        ECF No. 123 at 30-36, Ex. B, medical records; Opp. ECF No. 138 at 38 (mental health

26        placement chrono dated October 10, 2009, indicating plaintiff met the criteria to be

27        included in the EOP program); id., at 42, Stallcup noting plaintiff's records show he

28        went from the CCCMS level to placement in EOP level of mental health care on

1   October 15, 2009 id., at 57.

2   • On or around November 18, 2009, plaintiff was moved from Facility 4A to Facility 4B
3   because of "inappropriate behavior" described as "manipulation of nursing staff."
4   Defendant Stallcup was assigned as his case manager.  Stallcup Dec. ¶ 5; ECF No. 123
5   at 37, medical record.

6   • Plaintiff includes an exhibit, entitled Program Guide Overview - Mental Health
7   Services Delivery System which indicates that an inmate at "RC/EOP" is to be placed
8   in "Mainline/EOP" "[w]ithin 60 days of referral; 30 days of referral if clinically
9   indicated."  ECF No. 138 at 39.

10  • Plaintiff was not transferred to an EOP institution following the referral to the EOP
11  level of care.  ECF No. 123 at 62; Opp., ECF No. 138 at 53.

12  • Prior to meeting with plaintiff, defendant Stallcup declares that she reviewed
13  plaintiff's medical file and psychiatric notes/records and met with him at his cell on
14  December 2, 2009.  Stallcup Dec. ¶¶ 6-7; ECF No. 123 at 38 (copy of Interdisciplinary
15  Progress Notes, dated Dec. 2, 2009 by B. Stallcup describing mental status interview
16  with plaintiff on that date).

17  • The Progress Notes indicate that plaintiff refused a private setting for the interview.
18  ECF No. 123 at 38, Progress Notes, dated Dec. 2, 2009.

19  • According to defendant Stallcup, plaintiff at first communicated and expressed
20  himself well despite his anger and agitation over his pain medication having been
21  discontinued.  When plaintiff asked Stallcup to submit a medical request form for him,
22  she declined and told him he needed to submit the request through the proper
23  channels.  Plaintiff became angry and told her to "get the hell away from [his] door."
24  Stallcup Dec. ¶ 5; ECF No. 123 at 38, Progress Notes.

25  • Medical records indicate that defendant Stallcup next saw plaintiff at approximately
26  10:20 a.m. on December 9, 2009.  Defendant Stallcup's Progress Notes report that
27  plaintiff again refused a private setting for the interview.  He is reported to have said
28  he was "'not doing too good. . . .'"  He explained that he had medical issues, had not

1    received his property, had not having gone to yard even though he believed EOP

2    inmates were supposed to have yard every day.  Stallcup asserts that when she tried to

3    explain her role as his mental health services provider/case manager, she describes

4    plaintiff as having become "angry and belligerent," accusing her of not wanting to

5    help him and calling her a "fat fucking bitch," as she walked away.  Stallcup Dec. ¶ 8;

6    ECF No. 123 at 39, Progress Notes, Dec. 9, 2009; Opp., ECF No. 138 at 40.

7    • Defendant Stallcup requested that plaintiff's case be presented to the IDTT for re-

8    evaluation of his treatment plan.  Stallcup Dec. ¶ 9.

9    • On December 10, 2009, plaintiff appeared before the IDTT.  Stallcup Dec. ¶ 11; ECF

10   No. 123 at 40-44, Progress Notes/Mental Health Treatment Plan dated Dec. 10, 2009;

11   Opp., ECF No. 138 at 5.

12   • Defendant Stallcup presented plaintiff's case factors to the IDTT on December 10,

13   2009, and the team unanimously agreed that the CCCMS level of care was sufficient

14   to meet plaintiff's mental health needs.  The IDTT reduced plaintiff's level of care to

15   CCCMS on December 10, 2009.  Stallcup Dec. ¶ 11; Progress Notes and Mental

16   Health Placement Chrono, Ex. B, 13 & 18; Opp., ECF No. 138 at 42-46.

17   • Plaintiff includes an exhibit, entitled "Mental Health Treatment Plan," dated October

18   9, 2009, wherein it is stated that "an increase in level of care was considered to meet"

19   plaintiff's "current clinical needs."  The boxes "suicidal" and "assaultive" are checked,

20   but no recent suicide attempt is noted.  ECF No. 138 at 57.

21   • On December 25, 2009, plaintiff filed a 602 protesting his removal from the EOP level

22   of care on December 14, 2009 and claiming at the first level there was no reason for

23   doing so except in "reprisal[]" for lawsuits he had pending against doctors who are not

24   parties to this action.  MSJ, ECF No. 123, Esquivel Dec. ¶ 4, Ex. C Inmate/Parolee

25   Health Care Appeal at 59; Opp., ECF No. 138 at 48-50.

26   • In his second and third levels of review he referenced defendant Stallcup as among

27   those doctors who never worked with him or knew him and lied about his history with

28   the IDTT.  MSJ, ECF No. 123 at 60; Opp., ECF No. 138 at 49.

23

- In the responses at all three levels of review, it was noted that mental health staff determined that the CCCMS level of care provided plaintiff with the appropriate treatment and the reviewers concluded plaintiff did not meet the criteria for EOP. ECF No. 123 at 59-65.

- Plaintiff's medical records show that defendant Stallcup continued to provide plaintiff mental-health treatment at the CCCMS level.  Stallcup Dec. ¶ 13; ECF No. 123 at 46-57, Ex. B, medical records.

B.  Disputed Facts

- Plaintiff alleges in his amended complaint that defendant Stallcup never met with him. ECF No. 25 at 70.  At one point in his opposition plaintiff acknowledges that she met with him although he claims it was only once.  ECF No. 138 at 5.

- Another putatively disputed fact is whether plaintiff attended the Dec. 10, 2009, IDTT hearing/session.  He asserts in his verified complaint that defendant Stallcup took his file to IDTT "without me or my permission . . . ."  ECF No. 25 at 71.  Plaintiff undercuts this assertion in his opposition, where he states that defendant Stallcup took him to IDTT.  Opp., ECF No. 138 at 5.

- In both his amended complaint and his opposition, plaintiff claims Stallcup knew nothing about his case when she appeared before the IDTT.  Stallcup's declaration states that in preparation for the meeting she reviewed plaintiff's central and medical files, including his mental-health records and the information contained in her progress notes.  Stallcup Dec. ¶¶ 10-11; ECF No. 123 at 40-44, Progress Notes and Mental Health Treatment Plan.

- Plaintiff claims Stallcup lied to the committee in saying that she feared he would kill EOP patients.  In his opposition, he contends that she was attempting to provoke him to kill himself.  ECF No. 138 at 5.

- Defendant Stallcup maintains that she sought IDTT re-evalution of plaintiff's treatment plan based on her interaction with plaintiff, from which she determined that he was making minimal progress at the EOP level of care.  Stallcup Dec. ¶ 9.

24

Plaintiff argues that Stallcup sought reduction of his level of care in retaliation for his having filed a grievance against her and other staff for his not having been transferred to an EOP institution.  ECF No. 25 at 71.

- Defendant Stallcup stated that plaintiff had no documented history of suicide attempts or gestures to warrant a greater level of supervision.  She noted that one of plaintiff's past clinicians had concerns that plaintiff would take advantage of less assertive inmates, such as those commonly found in EOP, if given the opportunity.  She reported that plaintiff also had a history of not utilizing the mental-health system for his mental-health treatment, but instead focused on his personal needs, such as getting his property, medical attention, more freedom (yard time), and other extracurricular activities.  MSJ, ECF No. 123-11, Stallcup Dec. at ¶ 11.

- Plaintiff submits a mental health treatment plan dated April 2009, in which M.A Miller, PhD., noted a "history of suicide attempts; 4 attempts, 1 highly lethal."  Opp., ECF No. 138 at 59.  This court's review of plaintiff's voluminous and haphazardly arranged exhibits, including those attached to his superseded original complaint, reveals that a director's level response to an inmate appeal (regarding claims not at issue herein) noted that plaintiff had been placed in ad seg for his own safety on April 16, 2009, for having threatened to kill himself.  ECF No. 1 at 59, Oct, 7, 2009 third level appeal response for Log No. SVSP-09-013339.  There is also a "staff referral informational chrono" dated May 21, 2009, that plaintiff requested to see a psychologist/psychiatrist and was stated that plaintiff reported suicidal ideation.  ECF No. 1 at 66.

- Defendant Stallcup declares that she did not know what 602s or lawsuits, if any, plaintiff had filed against prison staff at the time she recommended to change his level of care.   She declares that her recommendation to reduce plaintiff's level of care was based on his case factors, her interaction with him, and her professional opinion concerning the most beneficial course of treatment for him.  She neither recommended nor heard anyone on the IDTT recommend, that plaintiff be removed from EOP

1   because he filed a 602 or complaint against prison staff.  ECF No. 123-11, Stallcup

2   Dec. ¶ 12.  Plaintiff

3   •   At the second level of plaintiff's appeal of his removal from EOP, it was determined

4       by a non-party that (1) on December 10, 2009 the IDTT found plaintiff did not require

5       the EOP level of care, (2) the IDTT reaffirmed that determination on March 4, 2010,

6       and (3) that "[f]urther, based upon a review of all mental health notes in [plaintiff's]

7       UHR since October 1, 2009," that is, before the EOP referral, "there was insufficient

8       evidence to support the EOP level of care."  Opp., ECF No. 138, March 9, 2010,

9       second level appeal denial by "B. Mac Tarraghan, PsyD"; see also, id. at 53-56, denial

10      on April 19, 2010 by Office of Third Level Appeals – Health Care Services.

11  C.      Discussion

12      Plaintiff presents evidence that creates a factual dispute about the accuracy of Dr.

13  Stallcup's representation that he had no documented history of suicide attempt.  Plaintiff

14  vigorously disputes the merits of the decision to reduce his level of care.  However, this does not

15  create a triable issue of fact material to retaliatory intent, which is an essential element of

16  plaintiff's claim.  "[T]he mere existence of some alleged factual dispute between the parties will

17  not defeat an otherwise properly supported motion for summary judgment; the requirement is that

18  there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 247

19  248.  Whether or not plaintiff was appropriately moved from the EOP to the CCCMS level of

20  care is not at issue here.  The record is devoid of facts that would permit a fact-finder to conclude

21  that Dr. Stallcup acted in retaliation for a grievance filed against her and others for plaintiff not

22  having been transferred to an EOP institution.  For this reasons, summary judgment should be

23  granted to defendant Stallcup.

24  IV.      Plaintiff's Claims of Excessive Force and Retaliation Against Defendants Barajas,

25           Medrano and Vasquez

26      Plaintiff has alleged that defendants Vasquez, Medrano and Barajas used excessive force

27  against him on February 4, 2011 by shooting and pepper-spraying him and forcing him to lie in

28  the spray for more than forty minutes.  ECF No. 25 at 74.  He further alleges that in retaliation for

his complaining about this incident, these defendants threw away the property in his cell. Id.
Plaintiff filed 602 appeals and staff complaints against Vasquez, Medrano and Barajas on
February 7, 2011, February 14, 2011 and February 27, 2011, in retaliation for which they "locked
[him] up." Id.

Defendants Vasquez, Medrano and Barajas counter that they neither shot nor pepper-
sprayed plaintiff, who was a bystander to the fighting that precipitated their use of force against
other inmates on February 4, 2011.  MSJ, ECF No. 121-1 at 2.  Defendants contend that if
plaintiff was exposed to pepper spray or struck by a ricocheting round, this was an unintended
consequence of their necessary use of force against three other inmates who were fighting.  Id.

A.  Legal Principles Governing Eighth Amendment Excessive Force Claim

"[W]henever prison officials stand accused of using excessive physical force in violation
of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-
faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312 [] (1986)).
When determining whether the force was excessive, we look to the "extent of the injury ..., the
need for application of force, the relationship between that need and the amount of force used, the
threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the
severity of a forceful response.'" Hudson, supra, at 7.

While de minimis uses of physical force generally do not implicate the Eighth
Amendment, significant injury need not be evident in the context of an excessive force claim,
because "[w]hen prison officials maliciously and sadistically use force to cause harm,
contemporary standards of decency always are violated." Id. at 9 (citing Whitley, at 327).

The unnecessary and wanton infliction of pain on prisoners violates the Eighth
Amendment.  Ingraham v. Wright, 430 U.S. 651, 670 (1977).  Prison officials therefore violate
the Eighth Amendment by using force that exceeds what is necessary to maintain or restore
discipline, with malice or sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7
(1992).  This "malicious and sadistic" standard applies when force is used in the context of an
immediate disciplinary need or other emergency.  Whitley, 475 U.S. at 320-21.  Force used in a

1   non-emergency situation violates the Eighth Amendment if it is used with deliberate indifference

2   to inmate safety.  <u>Jeffers v. Gomez</u>, 267 F.3d 895, 913 (9th Cir.2001) (per curiam).  A prison

3   official is deliberately indifferent to a substantial risk of serious harm to inmates if that official is

4   subjectively aware of the risk and does nothing to prevent the resulting harm. <u>Id.</u> (citing <u>Farmer v.</u>

5   <u>Brennan</u>, 511 U.S. 825, 828-29 (1994)).

6       B.   <u>Undisputed Facts</u>

7   •   On February 4, 2011, plaintiff was housed in Unit 4 on Facility 4A at CCI.  ECF No.

8        123-1, Ex. E to Esquivel Dec., plaintiff's response to requests for admission (RFA)

9        No. 43 at 32, 36.

10  •   Defendant Barajas was an escort officer, and defendants Medrano and Vasquez were

11       floor officers assigned to Unit 4.  ECF No. 123-2, Declaration of E. Barajas ¶¶ 2-3;

12       Declaration of B. Medrano ¶ 2; Declaration of S. Vasquez ¶ 2.

13  •   On February 4, 2011 at approximately 7:55 p.m., during the evening dayroom release,

14       three inmates—Gutierrez, Jackson, and Rosales—began fighting, striking each other

15       with closed fights in the face and upper body, in the dayroom area of section A of Unit

16       4.  Barajas Dec. ¶¶ 3, 5; Medrano Dec. ¶ 5; Vasquez Dec. ¶ 5; ECF No. 123-1,

17       plaintiff's response to RFA No. 44 at 32, 36; ECF No. 123-1, Ex. D to Esquivel Dec.,

18       Crime/Incident Report.

19  •   Plaintiff was not involved in the fight, nor was he in the vicinity of the combatants.

20       ECF No. 123-1, plaintiff's response to RFA Nos. 45-46 at 32-33, 36; ECF No. 123-1

21       at 1-2, Crime/Incident Report at 1-2.

22  •   At the time the fight broke out, there were approximately fifty to sixty inmates in the

23       dayroom.  Barajas Dec. ¶ 4; Medrano Dec. ¶ 4; Vasquez Dec. ¶ 4.)

24  •   Medrano and Vasquez were in the control booth; Barajas, Medrano and Vasquez

25       yelled for the inmates to get down on the floor.  All the inmates, except the three

26       combatants, complied with their orders.  Barajas Dec. ¶¶ 3, 6; Medrano Dec. ¶¶ 3, 7;

27       Vasquez Dec. ¶¶ 3, 6.

28  •   Because the combatants would not stop fighting, Medrano and Vasquez each grabbed

a 40 mm launcher.  Barajas grabbed the MK-46 Oleoresin Capsicum (pepper spray) canister with a hose, and Officer Calendario sounded the alarm.  Barajas Dec. ¶¶ 7-8; Medrano Dec. ¶ 6; Vasquez Dec. ¶ 7; ECF No. 123-1 at 17, Crime/Incident Report.

- Barajas, who was about twenty feet from the three fighting inmates, pepper sprayed them with a hose, aiming the spray at their faces and upper bodies.  Because the combatants moved around the dayroom as they fought, Barajas followed their movement, but did not aim for, nor intend to spray, any of the inmates, including plaintiff, who were prone on the floor.  Barajas Dec. ¶¶ 8-9, 16.

- Defendant Barajas emptied the contents of the canister, but the three inmates continued to strike each other.  Barajas Dec. ¶ 10.

- Defendants Medrano and Vasquez each shot three exact-impact-sponge rounds at the combatants.  Medrano aimed for Jackson's right thigh and Gutierrez's right and left thighs.  Vasquez aimed twice for Rosales's right thigh and once at Gutierrez's right thigh.  Neither Medrano nor Vasquez saw where the third round they each fired landed.  Medrano Dec. ¶¶ 9-12; Vasquez Dec. ¶¶ 8-11.

- Barajas did not see where the rounds landed.  Barajas Dec. ¶ 11.

- After Medrano and Vasquez each shot a third round, the combatants got down on the floor.  Medrano Dec. ¶ 13; Vasquez Dec. ¶ 12.

- By the time the three combatants complied with orders to get down, responding staff arrived in the housing unit, and Sergeant Bronson ordered the removal of the three combatants and then ordered a systematic recall of the dayroom.  Barajas Dec. ¶ 14; Medrano Dec. ¶ 14; Vasquez Dec. ¶ 14; ECF No. 123-1 at Crime/Incident Report, Ex. D, 14-15.

- In the Crime Incident Report, it is stated that medical staff completed a Medical Report of Injury or Unusual Occurrence (CDCR 7219) of all uninvolved inmates, including plaintiff, because of the pepper spray that was used in the dayroom (an enclosed area).  Medical staff instructed inmates on in-cell decontamination from the effects of the pepper spray.  ECF No. 123-1 at Crime/Incident Report at 4, 29.

29

- Defendants Barajas, Medrano, and Vasquez declare that at no time when they were in Unit 4 in February 2011, did plaintiff complain to them that he had been shot or pepper sprayed or that he required medical attention for any reason. Barajas Dec. ¶ 15; Medrano Dec. ¶ 16; Vasquez Dec. ¶ 17.

- Barajas, Medrano, and Vasquez declare they were unaware that plaintiff accused them of intentionally pepper spraying or shooting him on February 4, 2011, until months later when they were informed that Solomon had filed a 602 against them and other staff. Barajas Dec. ¶ 17; Medrano Dec. ¶ 19; Vasquez Dec. ¶ 19.

C. Disputed Facts

- Defendants Medrano and Vasquez declare they neither aimed the launcher at, nor intended to shoot, any inmate other than the three combatants. Barajas Dec. ¶ 12; Medrano Decl. ¶¶ 15, 17; Vasquez Decl. ¶ 16, ¶ 18.)

- Defendant Barajas declares he neither aimed for nor intended to spray plaintiff. Barajas Dec. ¶ 16.

- Plaintiff flatly disputes these defendants' declarations that he was not targeted. ECF No 138 at 7. He states that a round from defendant Medrano hit him in the chest, a round from defendant Vasquez hit him in the leg and defendant Barajas hosed him down with pepper-spray. Id. He claims that he was lying prone per orders of these officers and, after the inmates involved in combat had stopped fighting, he was shot because he was a black inmate and he had been involved in an argument with floor officer Garcia (evidently, defendant Garcia, herein). Id. Plaintiff claims that Medrano and Vasquez admitted that they aimed and fired repeatedly and hit him twice. Id. He claims defendant Barajas pepper-sprayed all the black inmates.[11] Id.

---

[11] The closest plaintiff comes to providing an exhibit demonstrating any factual support for his allegations is an undated form declaration attached to the opposition wherein plaintiff avers that the three inmates who were engaged in the fighting that precipitated the use of force on Feb. 4, 2011 had, at various times, told plaintiff they would testify that he was not involved in the incident and had witnessed plaintiff's having asked the defendants to stop shooting "us inmates" when inmates were already lying face down on the floor. He states that these inmates saw Vasquez and Medrano shoot him and that he was shot twice, once in the leg and once in the chest.

- Plaintiff did not inform medical staff who saw him on February 4, 2011 that he had been shot.  See ECF No. 123-1 at 29, Ex. D., Medical Report of Injury or Unusual Occurrence, Ex. D, 28; ECF No. 123-1 at 41, Closure Report, attached to Esquivel Dec.  Plaintiff provides a slightly more legible copy of the February 4, 2011 Medical Report of Injury or Unusual Occurrence.  MSJ, ECF No. 123-1 at 29; Opp., ECF No. 138 at 60.  It belies any representation that plaintiff had no immediate medical complaints, at least by the time he was seen by medical staff on that day.  Plaintiff is quoted in part in the report as having said "I will sue [.]  I have chest and heart conditions" and that he sat outside his cell for 45 minutes- - - evidently waiting for treatment.  Id.  It is indicated that he had spray exposure and that there was a "reddened area."  Id   It is also indicated on the report that plaintiff was decontaminated for exposure to chemical agents.  Id.  The report itself, however, provides no information to indicate that plaintiff had made defendants Barajas, Medrano and Vasquez aware of his medical needs after the incident.

- In the CDC 128-B closure report for the investigation into plaintiff's allegations regarding the February 4, 2011 incident, it is reported that L.V.N.  K. Worth stated that the injuries noted to plaintiff's chest "described chest pains due to exposure to chemical agents" and the reddened area on plaintiff's calf was not consistent with his having been shot with a 40 mm round.  MSJ, ECF No. 123-1 at 41.

- Plaintiff provides as an exhibit to his opposition an undated declaration in which he avows that on February 4, 2011, L.V.N. Kamala Worth and R.N. Mark Angeloni documented and recorded his injuries.  Plaintiff asserts that he showed K. Worth the big red marks on his chest and leg, and told her that the injury was from having been shot by defendants Vasquez and Medrano "for nothing."  He also avers that he told her he could not breathe and his asthma inhaler was empty, and that she told an unidentified correctional office that plaintiff "needed to be pulled out" to be examined

---

ECF No. 138 at 101.  Plaintiff does not include any declaration from these would be witnesses, however.

who refused.  Plaintiff claims she told him "she was writing it all down."  Opp., plaintiff's Declaration, ECF No. 138 at 121.  Plaintiff also separately lists, in an unsworn exhibit to his opposition, the names of some eleven inmates and two nursing staff (Worth and Angeloni) who he claims witnessed at least some portion of the events of  Feb. 4, 2011. No declarations from these witnesses are provided. ECF No. 138 at 63.

- Plaintiff claims he is asthmatic and that defendants Vasquez, Medrano and Barajas knew he needed medical attention but forced him to lie in the pepper spray for 45 minutes to an hour without treatment.  He also contends all the black inmates were pepper-sprayed.  ECF No. 138 at 7-9.

D.   Discussion

The evidence before the court demonstrates the existence of factual disputes regarding several matters, including whether plaintiff was hit by one or two rounds, whether those rounds were fired by defendants Vasquez and/or Medrano, and the extent of plaintiff's injuries.  These disputes are rendered immaterial, however, by the absence of evidence that the defendants acted with malice or sadistic intent to cause harm to plaintiff.  See Hudson, 503 U.S. at 7.  There is no genuine dispute that the primary target of defendants' exercise of force was the inmate-on-inmate altercation to which plaintiff was a bystander.  Because defendants were undeniably involved in the use of force to restore discipline, plaintiff would bear the burden at trial of proving not merely deliberate indifference but "malicious and sadistic" intent to harm.  See Jeffers, 267 F.3d at 912-13.  This is an extremely high standard.  Even if plaintiff's personal belief that he was deliberately shot and/or sprayed during the altercation were sufficient to support a finding of deliberate indifference to his safety, it could not support a finding that defendants acted with the malicious and sadistic intent to cause him harm.  None of the circumstances of the incident would support such a conclusion.  Similarly, plaintiff's declaration regarding his asthma and the amount of time he lay in the pepper spray, even if sufficient to create a triable issue regarding deliberate indifference, is insufficient to establish malicious and sadistic intent.  Accordingly, defendants Barajas, Medrano and Vasquez are entitled to summary judgment on plaintiff's Eight Amendment

1   claim of excessive force.

2          As for plaintiff's retaliation claim against these defendants, there is no evidence before the

3   court that could support a conclusion that he was targeted because of past staff grievances.

4   Indeed, the only such grievances he identifies in the context of this claim were filed after the

5   February 4, 2011 incident.  Insofar as plaintiff claims that he was "locked up" in retaliation for

6   filing subsequent grievances regarding the events of February 4, 2011, there is no evidence that

7   these defendants had any involvement in his ad seg placement.  For these reasons, defendants

8   Barajas, Medrano and Vasquez should be granted summary judgment of plaintiff's claim of

9   retaliation against them.

10      V.      Plaintiff's Retaliation Claim Against Defendants Campbell, Franco, Garcia, Lundy

11              and Prior

12          Plaintiff alleges that defendant Garcia threatened him for filing a 602 appeal and staff

13   complaint against defendants Barajas, Medrano and Vasquez (above) and that defendants

14   Campbell, Franco, Lundy and Prior "participate[d]" in denying him his constitutional rights by

15   refusing his request to be allowed yard exercise in retaliation for his refusal to withdraw his 602

16   and staff complaint.  FAC, ECF No. 25 at 74.

17          Plaintiff lists the names of inmates he alleges witnessed Garcia's threats  on February 27,

18   2011, but he submits no supporting declaration from any of them.  ECF No. 138 at 63, 67.  In his

19   opposition plaintiff states that defendant Garcia had nothing to do with anything involving his

20   602 complaints.  ECF No. 138 at 10.  Defendant Garcia contends that plaintiff has thus admitted

21   that Garcia was not involved in his ad seg placement, voiding his claim of retaliation by that

22   defendant.  MSJ, ECF No. 121-1 at 13.  Defendants Campbell, Franco, Lundy and Prior maintain

23   that they had legitimate reasons for placing plaintiff in ad seg based on plaintiff's claim that

24   Garcia had threatened him.  Id.

25      A.  Undisputed Facts

26          •   On February 27, 2011, plaintiff filed a staff complaint alleging that defendant

27              Garcia had threatened him.  Opp., ECF No. 138 at 66-68.  The form itself indicates

28              that that complaint was rejected; plaintiff does not include the documentation to

33

1    clarify the basis for the rejection.  Id., at 66.

2    •   On March 1, 2011, plaintiff submitted an Inmate/Parolee Request for Interview,

3        Item or Service (CDCR 22) addressed to Captain Lundy and Sergeant Campbell.

4        MSJ, ECF 123-1 at 39, Ex. F, Inmate/Parolee Request for Interview, attached to

5        ECF No. 123 at 2 ¶ 7, Esquivel Dec.; ECF No. 123-7 at ¶ 7, Declaration of

6        defendant J. Lundy.

7    •   In the CDCR 22, plaintiff alleged that he was shot and pepper sprayed by

8        defendant Vasquez on February 14 (actually February 4), 2011, that he was not

9        being allowed to shower and use the dayroom, and that he and others were "being

10       threatened & called snitches & a rat whenever [he] & others ask to speak to a

11       sergeant by C/O J. Garcia."  ECF No. 123-1 at 39.

12   •   Defendant Lundy declares that on March 2, 2011, he received plaintiff's CDCR

13       22, addressed to himself and defendant Campbell, wherein plaintiff was alleging

14       that staff was threatening him.  He forwarded the CDCR 22 to defendant

15       Lieutenant Prior.  ECF No. 123-7, Declaration of  J. Lundy Dec., ¶¶ 7-8; ECF No.

16       123-10, Declaration of K. Prior ¶ 4.

17   •   In a March 2, 2011 response to the CDCR 22 signed by defendant K. Prior, it is

18       stated that "a unit inquiry is being conducted" as a result of plaintiff's allegations.

19       In addition, the response sets forth that "due to the aforementioned" plaintiff's

20       "presence at Facility IVA are [sic] deemed a threat to the safety and security of the

21       institution . . . ." and he was to "be placed in ASU pending the completion or a unit

22       inquiry and review by ICC for future housing and program needs."  ECF No. 123-

23       1 at 39.  The same information is repeated in a March 2, 2011 CDC-144-D ad seg

24       placement notice ("lock up order") signed by defendant Prior.  ECF No. 123-10,

25       Declaration of K. Prior, ¶ 7, ECF No. 123-1 at 40.

26   •   The ad seg placement notice indicates, and defendant Sergeant Campbell declares,

27       he served the CDC 114-D on plaintiff at approximately 8:30 a.m. on March 2,

28       2011, and plaintiff was placed in administrative segregation.  Declaration of K.

Campbell ¶¶ 4-5; ECF No. 123-1 at 40 (ad seg placement notice); there is no dispute that plaintiff was placed in ad seg on March 2, 2011.  MSJ, ECF No. 123-7, Declaration of  J. Lundy Dec., ¶¶ 7-8; ECF No. 123-10, Declaration of K. Prior ¶¶ 4-5; Opp., ECF No. 138 at 100, plaintiff's Dec.

- Defendant Prior declares he ordered defendant Sergeant Franco to conduct an investigation into plaintiff's allegations.  Defendant Franco declares he immediately began his investigation on March 2, 2011.  Prior Dec. ¶ 6; ECF No. 123-4, Declaration of J. Franco ¶ 4.

- Plaintiff asserts that after the investigation he was cleared to go back to his cell after defendants Campbell, Franco, Prior and Lundy completed their investigation.  ECF No. 138 at 11.

B.  Disputed Facts

- Defendant Lundy declares that when he forwarded the CDCR 22 he received from plaintiff on March 2, 2011 regarding alleged staff threats against plaintiff to defendant, he did so with instructions to investigate plaintiff's allegations which he was required to do.  Prison regulations also required plaintiff's ad seg placement pending an investigation into the allegations and was necessary to ensure plaintiff's own protection and to ensure the investigation's integrity.  Defendant Lundy agreed with this course of action.  ECF No. 123-7, Lundy Dec., ¶¶ 6-8.

- Defendant Lundy declares that prior to receiving plaintiff's CDCR 22, he was neither aware that plaintiff was alleging he was shot and pepper sprayed during the incident in Unit 4 on February 4, 2011 nor that plaintiff had filed a 602 or complaint against staff arising from the incident on February 4, 2011. Lundy Dec. ¶¶ 3-6, 8.

- Plaintiff claims he filed a 602 appeal against defendants Vasquez, Medrano and Barajas and was placed in ad seg for filing 602 appeals, a staff complaint and a group complaint and was told by defendants Campbell and Prior that on March 2, 2011 defendant Lundy had said plaintiff would be placed in ad seg if he did not

35

withdraw his complaints.  ECF No. 138 at 10.  In one of several single-page declarations attached to his opposition, plaintiff avers he was placed in ad seg on March 2, 2011 for having refused to withdraw his 602 staff complaint regarding his claim of having been shot and sprayed and subjected to a cell search resulting in his property having been destroyed and also complains of having been denied medical attention until February 27, 2011.  Opp., ECF No. 138 at 100, plaintiff's Dec.

- Plaintiff includes a separate form declaration, dated April 8, 2011, attesting that two inmates, Anthony Perkins and Jackson, witnessed defendant Lundy, on March 4, 2011, threatening plaintiff with a long stay in administrative segregation for failing to withdraw his 602 complaints against staff for shooting and spraying him.  ECF No. 138 at 122.  Plaintiff fails to include a supporting declaration from either inmate and has not asserted that he ever a declaration from either.

C.    Discussion

The only grievance plaintiff has included as an exhibit that could have served as a predicate for a retaliation claim against defendant Lundy or any of this group of defendants was the February 27, 2011 appeal, which is marked as rejected.  A rejected appeal need not and cannot be withdrawn.  Accordingly, the allegation that plaintiff was pressured to withdraw his appeal does not make sense in relation to this grievance.  Construing plaintiff's claim as one of retaliation for filing the March 1, 2011 CDCR 22, plaintiff provides no evidentiary support for the threatening statements that he alleges were made by defendants and witnessed by other inmates.

Regardless of which complaint plaintiff thinks motivated the alleged retaliation, the claim fails for evidence of retaliatory intent.  Defendants have presented evidence that plaintiff's ad seg placement pending investigation of his allegations reasonably advanced legitimate correctional goal.  See Silva v. Di Vittorio, 658 F.3d at 1104.  Plaintiff points to no admissible evidence that creates a triable issue of fact on this issue.  Accordingly, defendants Lundy, Campbell, Franco and Prior should be granted summary judgment.

Finally, plaintiff acknowledges that defendant Garcia had no involvement in his ad seg

36

1   placement.  Accordingly, the retaliation claim fails as to this defendant.  To the extent plaintiff

2   claims that Garcia threatened him, no constitutional violation is presented.  Even threats of bodily

3   injury are insufficient to rise to the level of a constitutional violation, because "a mere naked

4   threat" does not equate with the commission of the act itself.  <u>Gaut v. Sunn</u>, 810 F.2d at 925.

5   Plaintiff does not offer evidence of any concrete act of retaliation by Garcia.  Moreover, the court

6   finds there is an absence of evidence to demonstrate that the filing of any grievance by plaintiff

7   was the motivating factor behind any threat by defendant Garcia.  The motion for summary

8   judgment as to defendant Garcia should be granted.

9                                              CONCLUSION

10          Because the court has found an absence of evidence to support plaintiff's claims and that

11   defendants are entitled to summary judgment on that basis, defendants' qualified immunity

12   arguments need not be addressed.

13          IT IS RECOMMENDED that:

14          1.  Plaintiff's motion for a stay of the proceedings, ECF No. 142, be denied;

15          2.  Defendants' motion for summary judgment, ECF No. 121, be granted and judgment be

16   entered for defendants.

17          These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22   objections shall be filed and served within fourteen days after service of the objections.  **DUE TO**

23   **EXIGENCIES IN THE COURT'S CALENDAR, NO EXTENSIONS OF TIME WILL BE**

24   **GRANTED.**  The parties are advised that failure to file objections within the specified time may

25   ////

26   ////

27   ////

28   ////

1    waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

2    1991).

3    DATED: August 18, 2014

4    _____
     ALLISON CLAIRE
5    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28